STATE v. JAMES H. KELLEY.

GENERAL TERM, 1892.

*Evidence of other crimes.    When admissible considered.
Several larcenies upon one expedition.*

1.  The respondent was indicted for stealing two lap robes.   The
only direct evidence of the larceny was that of one Howe,
an accomplice, who testified that he and the respondent
were out together with a horse and express wagon; that
they stopped before the shed where the robes were and that
the respondent remained in the wagon and held the horse
while he went in, brought out the robes and placed them in
the wagon.   *Held,* that the State might show, both by the
accomplice and by other testimony, that upon this same
expedition, in the same locality, both before and after the
taking of the robes, the respondent stole various articles
which were placed in the wagon, as tending to show that
he knew the taking of the lap robes to be felonious and par-
ticipated in it.

2.  But the State cannot show that after this expedition was fin-
ished the accomplice and respondent upon the same night
went in another direction and committed another larceny.

3.  The question, when in a prosecution for one offence evidence
of other offences is admissible, discussed.

Indictment for the larceny of two lap robes.   Plea, not
guilty.   Trial by jury at the March term, 1892, Washington
county, THOMPSON, J., presiding.   Verdict, guilty, and
sentence on verdict.   The respondent excepts.

The only witness on the part of the State to the fact of
the taking was one Charles Howe.   The respondent was a
farmer living in the town of Northfield.   Howe worked for
him on his farm, and at the time of the alleged crime was

keeping there a team consisting of a horse and express wagon. Howe testified that on the night of May 22, 1891, at the suggestion of the respondent, he and the respondent started from the respondent's farm with his, Howe's, team, to go to Roxbury, an adjoining town, to steal some phosphate from a store-house known as the "Warren shed"; that upon arriving at this shed they broke it open, found no phosphate in it, but carried away from it and placed in their wagon some baskets and butter tubs; that from there they proceeded to several other places in that vicinity, stealing from these various places several articles; a robe and whip from one, two horse bridles from another, a blanket from another, a bag of meal from another, all of which articles were taken and placed, sometimes by Howe and sometimes by the respondent, in the express wagon; that in the course of the expedition they stopped at the house of one Frank Spaulding, adjoining which was a shed; that the respondent sat in the wagon and held the team while Howe went into the shed and brought out and placed in the wagon the two lap robes, for the larceny of which the respondent was on trial; that they afterwards drove home and had a lunch; that after lunch the respondent suggested that they were still without their phosphate, and that thereupon, at his instance, they went to a neighboring store and stole two bags.

There was no witness except Howe to the fact of the taking, or the fact of the expedition, or the fact that Howe and the respondent were together in Roxbury that night, which the respondent denied; but the State was allowed to prove, by the owners of those various articles, that they were stolen by some one about that time, and that certain of the articles were found upon the premises of the respondent August 24 following.

The respondent excepted to the admission of the evidence relating to the commission of any other larceny than the one for which he was on trial.

*J. A. Wing* and *J. G. Wing* for the respondent.

Proof of other larcenies was not admissible. *Barton* v. *State*, 18 Ohio 221; *State* v. *Goetz* and *Martin*, 34 Mo. 85; *Gilbraith* v. *State*, 41 Texas 567; *People* v. *Sessions*, 10 Hun. 158; *Regina* v. *Oddy*, 6 British Cr. Cas. 266; *Peck* v. *State*, 2 Hun. 86; *Rex* v. *Birdseye*, 4 C. &. P. 386; 19 E. C. L. 566; *People* v. *Hartman*, 62 Cal. 562; *State* v. *Riavis*, 71 Mo. 419; *State* v. *Danbert*, 42 Mo. 242; *State* v. *Kelley*, 18 Texas App. 262.

*Z. S. Stanton*, State's Attorney, and *J. H. Senter* for the State.

Evidence that this larceny was one of a continuous series upon the same expedition was properly received. Whar. Cr. Ev. (9th Ed.) 31; *Com.* v. *Sturtevant*, 117 Mass. 122; *Health* v. *Com.*, 1 Rob. (Va.) 735; *Gassenheimer* v. *State*, 52 Ala. 318; *Goersen* v. *Com.*, 99 Pa. 388; *Goersen* v. *Com.*, 103 Pa. 477; *Rex* v. *Long*, 6 C. & P. 179; *People* v. *Stout*, 4 Park. Cr. Cas. 127; *Rex* v. *Sailabury*, 5 C. & P. 155; *State* v. *Schaffer*, 30 N. W. Rep. 639; *Lamb* v. *State*, 5 Cent. Rep. 774; *Rex* v. *Moore*, 2 C. & P. 235; *Regina* v. *Briggs*, 2 M. & R. 199; *State* v. *Folwell*, 14 Kan. 108; *Burr* v. *Com.*, 4 Gratt 534; *King* v. *Wylie*, 1 B. & P. 94; *Regina* v. *Reardon*, 4 F. & F. 79; *King* v. *Ellis*, 13 Eng. Com. Law 76; *Moore* v. *State*, 28 Texas 227; *U. S.* v. *Boyd*, 45 Fed. Rep. 852; *Regina* v. *Cobden*, 3 F. & F. 833.

MUNSON, J. It is a general rule that the charge upon which a respondent is being tried cannot be supported by proof of his having committed other offences. Rosc. Cr. Ev. 81; *Shaffner* v. *Com.*, 72 Pa. St. 60, (13 Am. Rep. 649). But evidence which legitimately tends to support the charge is not to be excluded on the ground that it

will show other offences.   1 Whar. Crim. Law § 649 ; *Com.* v. *Choate*, 105 Mass. 451.   The numerous cases in which evidence of this nature has been received have been classified with more or less particularity by different text writers. Steph. Dig. Ev. Art. 11, 12 ; 1 Greenl. Ev. § 53 n. ; 1 Bish. Cr. Proc. §§ 1125–1129 ; 44 Am. Rep. 299 note.

Evidence tending to show that the respondent has been guilty of other like offences is received in cases where it is necessary to prove a knowledge of the character of the thing in respect of which the act was done.   Thus, upon the trial of one charged with passing counterfeit money, it may be shown that he has, upon other occasions, passed money of that character.   *Reg.* v. *Forster*, Dear. 456 ; *Com.* v. *Bigelow*, 8 Met. 235.   See *Wood* v. *United States*, 16 Peters 342.   So, on an indictment for receiving stolen goods, it may be shown that the respondent has at different times received from the same individual other goods known to have been stolen from the same person or place.   *Rex* v. *Dunn*, 1 Moody 146 ; *Copperman* v. *The People*, 56 N. Y. 591.

Evidence of this description has also been received to establish the felonious use of certain destructive agencies, which may be so obscurely employed as to leave their results naturally referable to accident.   Thus, upon the charge of burning a building with intent to defraud the insurers, evidence that other insured buildings owned by the respondent had burned from unexplained causes has been received. *Reg.* v. *Gray*, 4 F. & F. 1,102.   But see *State* v. *Raymond*, 53 N. J. 260 (21 Atl. 328).   And it has been held that when a murder is alleged to have been committed by administering poison to the deceased, it may be shown that others who had previously received food or medicine from the respondent had died of the same poison.   *Reg.* v. *Geering*, 18 L. J. M. C. 215 ; *Goersen* v. *Com.*, 99 Pa. St. 388 ; 106 Pa. St. 477.

Evidence covering the commission of another offence is

also admissible when two crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. It is doubtless true that the criminal acts shown in many of the cases referred to this rule would come within some phase of the two comprehensive rules hereafter stated; but it is evident that the circumstantial connection between transactions of a criminal nature may be so intimate as to require proof of them all, independently of other grounds of admission. *Mason* v. *State*, 42 Ala. 532; *State* v. *Folwell*, 14 Kas. 105; *State* v. *Wentworth*, 37 N. H. 196; *Heath* v. *Com.*, 1 Rob. (Va.) 735; *Brown* v. *Com.*, 76 Pa, St. 319; *Rex* v. *Ellis*, 6 B. & C. 145.

Such evidence is also received to show identity of person, local proximity, or other facts calculated to connect the respondent with the commission of the offence. *Halleck* v. *State*, 65 Wis. 147; *Com.* v. *Choate*, 105 Mass. 451. In the case last cited, there was evidence tending to show that the building which the respondent was charged with burning had been fired by means of an ingeniously constructed box, adapted to incendiary purposes only; and the prosecution was permitted to show that the respondent had the skill, materials and tools requisite for the construction of this box, by evidence which tended to prove that he had constructed and made felonious use of another box of the same description.

Again, the prosecutor may show motive, purpose, preparation or concealment, even though it involve proof of a distinct crime. On a trial for murder the prosecution may show an adulterous intimacy between the respondent and the wife of the deceased, not broken off before the commission of the offence charged. *Com.* v. *Ferrigan*, 44 Pa. St. 386. An intention to do the violence alleged may be established, not only by showing threats of injury, but by showing indictable attempts to do the injury. *Williams* v.

*State*, 8 Humph. 585; *Lamb* v. *State*, 66 Md. 285. It may be shown upon the trial of one charged with burning an out-building that he had previously poisoned the occupant's house dog. *Halleck* v. *State*, 65 Wis. 147. On an indictment for murder it may be shown that the deceased had taken the life of another on the respondent's procurement, and had been seen in the act. *Rex* v. *Clewes*, 4 C. & P. 221.

It is also held that in establishing certain offences involving sexual intimacy, the prosecution may show other instances of like criminal conduct between the respondent and the one with whom the offence is claimed to have been committed. This is upon the ground that it is proper to show the existence of a continuing adulterous disposition of the two persons towards each other, and that there can be no better evidence of such a disposition than commissions of the act itself. *State* v. *Bridgman*, 49 Vt. 202. But it will be noticed that this evidence touches only the respondent's relations to the particular individual concerned in the offence charged. Evidence of other offences is never received to establish a criminal disposition in the broad sense of the term, or a tendency to commit generally offences like the one alleged.'

The admissibility of the evidence received under objection in this case must be tested by the rules above stated. The evidence covered fifteen larcenies other than the one charged in the indictment. These larcenies were all committed on the same night, and all but one on the same expedition. They were committed at different buildings located on a section of road several miles in length. They were not committed in the execution of any settled plan, but were severally undertaken as occasion offered. They were all accomplished with the aid of the same person. Neither the respondent nor his accomplice was seen by any one during the time in question. The evidence of the State con-

sisted of the narrative of the accomplice, and the testimony of all but one of the owners of the stolen property that the several articles were in the places from which the accomplice said they were taken, and that they were missed about the time the accomplice said the expedition took place, together with evidence of an identification of some of the articles by their owners as being the same found some months after upon the respondent's premises.

The mere fact that certain larcenies were committed on the same night, or the same expedition, did not entitle the State to show all in proof of one. The fact that both the respondent and the witness were concerned in them all did not so link them together as to make evidence of all admissible. Evidence of the larcenies not embraced in the charge was received upon the ground that the fact of such larcenies having been committed, when connected with the testimony as to the time when and places from which the articles were missed, and of the subsequent discovery of some of them on the respondent's premises, tended to corroborate the testimony of the accomplice as to the commission of the theft in question. But such evidence could have no legitimate corroborative force unless there was some sufficient connection between these offences and the one for which the respondent was being tried. Testimony that on the previous night the witness and the respondent had gone together to a certain place and stolen a harness, accompanied with evidence of a harness having been missed at that time, would have had no tendency to corroborate the witness in his account of this theft. The question is whether the fact that the articles shown to have been missed and in part found were taken on the same night or the same expedition, afforded the necessary connection. If the evidence was admissible in this view it must have been upon the ground that the fundamental assertion of the principal witness was that such an expedition did occur on the night and over the road stated, and

that evidence of these other articles having been left at, and afterwards missed from, the places stated, and of some of them being finally found on the respondent's premises, was corroborative of the fact upon which the testimony concerning the taking of the lap robes rested. But it is urged with some force that evidence that certain articles were missed along the line of this road soon after the night in question in no way corroborated the statements of the witness connecting the respondent with the expedition. The same objection might, perhaps, be urged to the evidence relating to such of the articles as were afterwards found on the respondent's premises, in view of the fact that the accomplice lived and kept his team at the same place. If, however, it were to be held that other offences might be shown on the ground above stated, this would not sustain the admission of so much of the testimony of the principal witness as related to the larceny concerning which there was no other evidence.

But without passing upon the admissibility of the evidence on this ground, or considering other grounds upon which evidence of some of the larcenies might be held admissible, we think evidence of all the larcenies committed on the same expedition was, in the circumstances of this case as presented by the exceptions, fairly within the reason of the rule first above stated. It does not appear that the respondent's defence had been limited by any previous statement, and the admissibility of the evidence must be tested upon the case presented by the State, without regard to the respondent's subsequent testimony that he did not accompany the State's witness on any such trip. The expedition was with a team which belonged to the witness. The lap robes were not taken by the respondent personally, nor in his presence. It does not appear that there had been any conference or understanding in regard to them. The respondent remained in the wagon, which stood in the road, while

the witness went away, and afterwards returned with the lap robes and placed them in the wagon. If the evidence of the State had been confined to this single occurrence, the jury, even if satisfied that the occurrence took place as stated, might have considered that there was room for a reasonable doubt as to whether the respondent was cognizant of the nature of the transaction. But when the evidence disclosed the gathering from different places of a miscellaneous assortment of personal property, in taking some of which the respondent was actively engaged, and a return with the load thus made up to the respondent's house, it might no longer be doubted that the respondent had participated in the removal of the lap robes with full knowledge that they were stolen.

But testimony received on this ground could not properly be extended beyond the history of the load which contained the lap robes. We find no ground upon which evidence of the subsequent larceny could be received. After the respondent and his accomplice had returned with the load made up as above stated and stowed the articles away, it was suggested that they go in another direction and steal some prosphate; and this was accordingly done. It cannot be said that this was made admissible by the evidence of the State as to the inception of the first expedition. It had appeared that that expedition was suggested and undertaken by the respondent for the purpose of stealing some phosphate which he expected to find at a certain shed, and that the expedition failed of its original purpose because no phosphate was found there. But the respondent's desire to steal some phosphate cannot be held to have entitled the State to prove everything that occurred until that desire was satisfied. Evidence of a second expedition, undertaken upon a renewal of the original purpose, had no legitimate tendency to support the other statements of the witness. It was not needed to relieve his main narrative of an inherent

improbability. Any discrepancy which might otherwise have been suggested between the alleged purpose of the expedition and their return without phosphate was sufficiently explained by their failure to find any ; and evidence that the respondent persisted in his purpose until it was accomplished had no explanatory effect beyond this. The argument by which it is sought to sustain the admissibility of this evidence would have justified proof of the successful termination of the respondent's attempt to steal phosphate if it had occurred a week or a month later. We find no such connection between the larceny charged, and the theft of phosphate on another expedition and in a different locality, as would make evidence of the latter admissible in proof of the former. It was effective only as it appealed to the tendency to believe that a man who has committed a larceny at one time may very likely have been guilty of the same offence at another.

*Sentence vacated, judgment reversed and cause remanded.*