## State of Vermont v. Roland Garceau

( 170 A.2d 623 )

March Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed May 2, 1961

*John E. Bernasconi,* State's Attorney, for the State.

*Lisman & Lisman* for the respondent.

**Holden, J.** Sometime during the early morning hours of December 15, 1959, two burglaries occurred in the city of Barre. The garage property of the H. G. Bennett Co. Inc. was entered and a

1960 white Buick sedan stolen. Another breaking and entry at the club rooms of the Loyal Order of Moose resulted in the theft of an office safe weighing between four and five hundred pounds. The respondent has been charged with these offenses and found guilty on trial by jury. The question presented is whether he has been regularly and fairly convicted.

At about 3:45 on the morning of the crimes, George Buswell, a night watchman employed by the Cody enterprises at the Moonlight Drive-In Theatre and the adjacent Cody's Garage on the Barre-Montpelier Road, was making his inspection tour in an automobile. He observed the stolen Buick about 150 yards from the theatre. Buswell continued into the Cody Garage yard and from there saw the Buick enter the theatre yard and come to a stop in front of two large windows of the theatre building. He observed the lights of the Buick go off. Buswell proceeded to the theatre and drove to about one hundred feet from the Buick. As he approached the stolen vehicle, he saw a man jump out from the driver's side and disappear around the building. The night was clear and cold. There were neon lights in the vicinity of the Buick. The watchman testified that the man he saw flee from the Buick was wearing light gray trousers and a red jacket. The watchman proceeded to the Buick and there found the stolen safe alongside. He then left the scene to call the Montpelier Police Department.

Some two hours later a police patrol arrested the respondent as he was walking along the Barre-Montpelier Road about three hundred yards from the theatre. The respondent was wearing light gray trousers and a red jacket. Snow was encrusted on his clothing and there were particles of weeds on his clothes and in his hair.

Later at the police station the watchman, Buswell, identified the respondent as the man who fitted the description of the person he saw run from the Buick. At the trial he testified his identification was made entirely from a rear view of the occupant of the Buick, that he could not observe his face and could not tell whether the person he saw was young, old or middle-aged. On cross-examination, the witness said he could not identify the respondent as the man he saw running from the Buick on the morning of December 15.

Investigating police officers traced human foot prints in the snow leading from the Buick to a high board fence to the rear of the theatre

building. It appeared that the person who made the tracks had run to the fence and then crawled underneath the barrier. Red cloth fibres were found and removed by a state police corporal from the underside of the fence boards at the point of crossing. The officer was called as a witness for the State. After identifying the fibres and a package found near the Buick, counsel for the State inquired:

Q. Now Corporal Ley, did you ever have a chance to converse with the respondent, Mr. Garceau? A. Yes, sir, I did.

Q. And would you care to tell us the subject of your conversation?

A. Yes, sir. In response to a question while I was talking with Mr. Garceau he told me he had served three different terms in Windsor.

Counsel for the respondent interrupted and moved for a mistrial, indicating to the court that he did not intend to call the respondent to the stand and pointing out that this kind of evidence could not be brought out unless the respondent was called as a witness. He claimed irreparable damage had been done to the respondent's case.

The court disposed of the motion by stating it believed the question was objectionable before the answer was given and if respondent's counsel had objected to the question, the objection would have been sustained. Without further comment or caution to the jury, the motion was denied and exception preserved to the respondent. The trial proceeded without further evidence concerning the conversation of the witness with the respondent. The respondent did not testify and put in no evidence at the conclusion of the State's case.

In submitting the case to the jury the court referred to this incident at the trial. He instructed the jury: "In respect to that—and I feel that I may be compounding an error, and if I am it is available for correction—at one time during this trial there was a remark made about the respondent having served sometime or other time at the State's Prison in Windsor. That is to be given no consideration whatsoever by you; whether he has or has not served a sentence in the past is not material in this trial and I admonish you to strike it from your minds and give it no consideration whatsoever when you are considering the charges against this respondent at this time." At the conclusion of the charge, counsel for the respondent, although recognizing the court's good intentions in trying to eradicate the prejudicial effect of this aspect of the trial, excepted to the charge on the

ground that it failed to accomplish this result and added emphasis to the incident.

The motion for mistrial presents the main concern of this appeal. The answer given by the police officer went beyond the scope of the question asked by the examiner. The statement concerning the respondent's past imprisonments characterized the accused as a hardened criminal and put his bad character and past criminal record squarely before the jury.

It is to be noted that the question presented does not concern prior offenses that may have been connected to the crime charged to establish motive, intent, plan or purpose. Compare *State* v. *Levine,* 117 Vt. 320, 327, 91 A.2d 678; *State* v. *Williams,* 94 Vt. 423, 430, 111 A. 701; *State* v. *Kelley,* 65 Vt. 531, 534, 27 A. 203, 36 Am. St. Rep. 884. Nor is there any question of impeachment of any witness nor credibility involved under 12 V.S.A. §1608.

The undeniable effect of the answer given was to brand the respondent as suspect with felonious inclinations. Character is never an issue in a criminal prosecution unless and until the respondent brings it into the trial. And the rule is firmly and universally established that. the prosecution may not initially attack the defendant's character. *State* v. *Hedding,* 114 Vt. 212, 215, 42 A.2d 438; 1 Wigmore, Evidence, 3rd Ed. §57, p. 456; 22 C.J.S. Criminal Law, §676, p. 1067; 20 Am. Jur. Evidence, §325, p. 304.

"In a very real sense a defendant starts his life afresh when he stands before a jury, a prisoner at the bar. * * * Inflexibly the law has set its face against the endeavor to fasten guilt upon him by proof of character or experience predisposing to an act of crime." *People* v. *Zackowitz,* 254 N. Y. 192, 197, 172 N.E. 466, 468.

It is not that character is irrelevant to the question of innocence or guilt, but policy forbids it until the accused has elected to make it an issue. The reason for the rule of exclusion lies in the tendency of triers of the fact to give excessive weight against the accused to a vicious criminal record. Moreover, it tends to obscure the main issue and calls upon the accused to account for past offenses for which he is not being tried. The natural and inherent effect of evidence of other unrelated offenses upon the minds of the jury is to prejudice them against the respondent. *State* v. *Howard,* 108 Vt. 137, .155, 183 A. 497; see also, 1 Wigmore, Evidence, *supra,* and §194, p. 646.

■ The harm, once done, is not necessarily erased nor the error corrected by a subsequent charge to the jury to disregard it. *Boyd v. United States,* 142 U.S. 450, 35 L.Ed. 1077, 1079; Wharton, Criminal Evidence, 12th Ed. §248. "Indeed, it may well be that irreparable prejudice has been caused before the court can intervene, and thereafter any attempt to remove it from the case is futile * * *." *Paul v. Drown,* 108 Vt. 458, 462, 189 A. 144, 109 A.L.R. 1085. The cause of the harm does not lie with the court nor rest on opposing counsel, for it is the responsibility of the examining counsel to maintain effective control of the witness on direct examination. *Paul v. Drown, supra,* 108 Vt. at 462.

■ How the jury would have resolved the real issue of the respondent's guilt had the impact of the incompetent assertion not been applied is at best a matter of conjecture. Under the circumstances his right to a fair and impartial trial, free from this influence, could only be protected by affording him a new trial. *People v. Gougas,* 410 Ill. 235, 102 N.E.2d. 152, 28 A.L.R.2d. 852, 857.

■ It is quite true, as argued by the State, that a motion for mistrial is directed to the court's discretion, and a denial of the motion will not result in reversible error unless the rights of the respondent are injuriously affected. *State v. Levine, supra,* 117 Vt. 328, 91 A.2d 682. There the evidence of other offenses was properly admitted by a related connection with the offense charged. In the instant case the crucial connection was not made nor offered. The rule of exclusion which forbids the admission of the testimony that was erroneously given is founded on the law's recognition of its prejudicial effect and manifest injury to the rights of the respondent.

■ Moreover, it would appear from the record that the court denied the motion for the reason that counsel for the respondent failed to make a timely objection to an improper question, and assigned the fault to the respondent. The question was innocuous and did not forewarn of prejudice. If such was the reason for the denial, the ground was untenable, amounting to an abuse of discretion in that it failed to recognize the real consideration which attended the motion. *Dusckiewicz v. Carter,* 115 Vt. 122, 127, 52 A.2d 788; *New England Box Co. v. Tibbetts,* 94 Vt. 285, 290, 110 A. 434.

■ Further error appears at the time of final argument to the jury. There is no complete verbatim transcript of the closing remarks of counsel for the State, but the record establishes the prosecutor's argument was interrupted by the respondent's attorney with the request: "May the record show that the State's Attorney has just argued that if finger prints * * * has just argued that there was no evidence as to whether finger prints were or were not taken from the car, but if they were and showed that they were not Mr. Garceau's, this prosecution would not have been brought. That is wholly outside the evidence and we would like an exception." The court allowed an exception to the respondent without further comment. There was no challenge by the attorney for the State concerning the accuracy of the exception as stated. The action of the trial court in allowing an exception and permitting the argument to stand without withdrawal or rebuke amounted to a ruling that the exception was correctly stated and that the argument was proper. *State* v. *Parker,* 104 Vt. 494, 500, 162 A. 696; *Landry* v. *Hubert,* 100 Vt. 268, 277, 137 A. 97.

■ The ruling was in error. In effect, the argument assured the jury that they need not be concerned by the want of proof concerning finger prints, for if such evidence were available and it was favorable to the accused, he would not have been called upon to stand trial. This was not only beyond the evidentiary facts, but invited the jury to speculate in favor of the respondent's guilt. It brought to the attention of the jury unproved and prejudicial matter in an unwarranted attempt to justify the complaint outside the record. *Tyrell* v. *Prudential Insurance Company of America,* 109 Vt. 6, 17, 192 A. 184, 115 A.L.R. 392; *Paul* v. *Drown, supra,* 108 Vt. at 462, 189 A. at 146.

*Judgment reversed and cause remanded.*