**STATE of Maine**

**v.**

**Joseph A. WYMAN.**

Supreme Judicial Court of Maine.

Nov. 12, 1970.

---

Robert T. Coffin, County Atty., Portland, for plaintiff.

Grover G. Alexander, Gray, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, and WEATHERBEE, JJ.

DUFRESNE, Chief Justice.

Defendant Wyman was indicted under 17 M.R.S.A., § 2656 for the crime of assault upon one William H. Thurston while armed with a dangerous weapon, to wit, an automobile, with intent to kill and slay the said Thurston. Tried before a Cumberland County jury, the defendant was found guilty as charged, sentenced to a term in the Maine State Prison, from which judgment of conviction he has appealed to this Court. The appeal must be sustained.

In his points on appeal, the defendant Wyman claims error in the admission of evidence at trial in the following particulars, (1) when the Court below permitted the State over objection to introduce the circumstances surrounding the defendant's manner of driving of the automobile, its speed and its near-running down of other persons sometime following the alleged assault upon Thurston, and (2) when the Court allowed the prosecutor to bring out Wyman's marital status, again over strenuous objections, where the evidence unequivocally showed that the defendant prior to the criminal conduct with which he was charged in the indictment was on the campus of Gorham State College for the purpose of picking up his "date" and was more or less flirting with other girl students at that institution.

We discuss the evidence only to the extent it is necessary to understand the issues raised on appeal. Through several eyewitnesses, the investigating officer and Thurston, the victim of the alleged assault, the State developed before the jury the following facts: the defendant on May 3, 1968 shortly before 6:30 p. m. was on the Gorham State College campus driving a white Corvette which belonged to his friend who accompanied him on this occasion. Since it was too early to call on a girl-friend student with whom he had made a date for the evening, Wyman drove toward the dormitories where he engaged in conversation with female students who had been attracted to the car from their respective room-windows overlooking the area, to the extent that one of the girls was on her way to the car when a loud and vulgar exchange of words of the cursing and swearing variety took place between Thurston and Wyman. The evidence discloses that at the car, there was some physical contact between Wyman and Thurston; whether Thurston was punched in the face or whether his face was pushed out of the car was for jury determination. At any rate, these events were merely preliminary to the alleged criminal conduct charged against the defendant Wyman. Once Thurston's head was out of the car, Wyman started to drive away while Thurston who was then standing in the open roadway was challenging him to come back and was hurling vulgar language at the receding automobile. Instead of leaving the area, Wyman turned the car around and was moving slowly in the direction of Thurston, when, so the witnesses testified, at a short distance away from him, Wyman gunned the car directly at Thurston who, by reason of the impact, was catapulted over the windshield to the ground. His subse-

quent transportation to the hospital revealed that the injuries suffered were not serious. The defendant denied that he intentionally ran Thurston down with the car. The State, in order to show purposeful action or intent on the part of Wyman in the Thurston case, offered evidence of subsequent similar conduct within an hour of the alleged assault on Thurston through the testimony of another student at Gorham State College. Charles Gordon testified that between 7:15 and 7:30 p. m. of May 3, 1968 when he and John Craig were walking on campus in the Russell Hall parking lot area, so-called, the white Corvette operated by the defendant was coming towards them accelerating its rate of speed to about 30 or 35 miles per hour until such time as both had to jump out of its way to avoid being struck, the car swerving when it reached them. Gordon stated that Wyman hollered "Do you want to be No. 2?" The car was said to have missed Gordon by 3 feet and Craig by 1½ or 2 feet. It came close enough to scare the witness.

As stated in State v. Acheson, 1898, 91 Me. 240, 39 A. 570, "[i]t is an elementary principle in the law of evidence that when a respondent stands charged with the commission of a particular criminal act, evidence that he did a similar thing at some other time is generally deemed irrelevant and inadmissible." But evidence of conduct of precisely similar nature to that charged, even though not connected with it and inadmissible as such to prove the commission of the act involved in the substantive charge, is uniformly received for the limited and specific purpose of aiding to determine the quality of the act and the legal character of the offense by illustrating the intent with which the act was committed. In the instant case, similar conduct of the defendant in the driving of his car within a relatively short time of the events of the main charge, after he had been twice ordered from the campus and while still on campus grounds, coupled with the driv-

er's statement "Do you want to be No. 2?," was relevant evidence for consideration of the jury to the limited extent of its shedding some light upon the intent of the operator of the automobile in the Thurston episode. Introduction of this type of evidence should always be carefully guarded, and the Court in the instant case fully instructed the jury respecting the limited purpose for which this evidence was received. Where the intent of a party forms a part of the matter in issue, evidence of other similar acts, not in issue, may be introduced, provided they tend to establish the intent of the party in doing the acts in question. See, State v. Smith, 1944, 140 Me. 255, 37 A.2d 246; State v. O'Toole, 1919, 118 Me. 314, 108 A. 99; State v. Buckwald, 1918, 117 Me. 344, 104 A. 520; State v. Bennett, 1918, 117 Me. 113, 102 A. 974; Nichols v. Baker, 1883, 75 Me. 334; 29 Am.Jur.2d Evidence, § 366. Remoteness of time and the possible innocuousness of the defendant's statement made in the course of the second incident were matters initially for the consideration of the Justice at trial in the exercise of discretion in ruling upon the admissibility of such evidence, and ultimately for jury evaluation within the limited purposes for which the evidence was received. We cannot say that the Court below erred in this respect under the particular circumstances of this case.

The prosecutor's purpose in introducing in evidence the fact that the defendant was still married on May 3, 1968 at the time of the conduct charged against him in the present indictment, when immediately prior thereto he was on the Gorham State campus to pick up a "date" and was otherwise flirting with other female students at that institution, was solely to attack defendant's credibility respecting his version of the events of that evening and especially concerning his stated innocent intent in the whole affair. When he first sought to get this evidence from the defendant's girl friend in cross-examination, the State's attorney, in an offer

of proof made in the absence of the jury, candidly claimed that the evidence was admissible as bearing on the defendant's credibility when he testifies. The defendant's marital status was allowed to go to the jury only after the defendant took the stand and through cross-examination by the State. The jury was not instructed specially regarding the particular consideration it should give to this evidence. Defense counsel at every instance when the matter came up objected to the State's injection of what may be described as an immoral relationship which by innuendo would tend to prejudice the jury against the defendant. The Court below allowed the evidence on the ground that it merely showed status and was non-prejudicial. We disagree.

By taking the stand to testify in his own behalf an accused does not put in issue his general character or propensities; it merely opens up the issue of credibility. State v. Gress, 1957, 250 Minn. 337, 84 N.W.2d 616; 3 Wigmore, Evidence (3rd) §§ 983, 984, 1020. The defendant as a witness is subject to impeachment, but misconduct that may prejudice the jury and yet be remote to questions of veracity should not be admitted since the risk of harm far exceeds the benefits to be gained by its admission. State v. Gress, supra.

■■ Prosecuting attorneys may in the interest of the State submit an accused to a severe cross-examination for the purpose of affecting his credibility; they should prosecute with earnestness and vigor. While they may strike hard blows, they must refrain from improper and illegitimate tactics solely calculated to produce a conviction. It is just as much their duty to see that the accused has a fair trial as it is to bring about a just conviction of the guilty. Berger v. United States, 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321.

■ The defendant's complaint that the Court committed error in permitting evidence of his marital status to go to the jury is based on the contention that

his right to a fair and impartial trial was prejudiced by admission into evidence on cross-examination of a matter tending to show that he was either guilty of marital infidelity, or was a person of loose morals or of bad character. Character is never an issue in a criminal prosecution unless and until the defendant brings it into the trial and makes it an issue by introducing evidence of good character and reputation. The rule is universal that the prosecution may not initially attack the defendant's character. State v. Garceau, 1961, 122 Vt. 303, 170 A.2d 623; 1 Wigmore, Evidence, 3rd Ed., § 657, p. 456; 22 C.J.S. Criminal Law § 676, p. 1067; 20 Am.Jur.2d, Evidence, §§ 340, 341. Furthermore, character evidence, when admissible, must be evidence of reputation for certain traits of character rather than specific acts of wrongdoing. See, State v. Flaherty, 1929, 128 Me. 141, 146 A. 7; State v. DiPietrantonio, 1956, 152 Me. 41, 122 A.2d 414. We are not here concerned with impeachment of a witness' credibility by proof of criminal conviction of a felony, any larceny or any other crime involving moral turpitude as permitted under 16 M.R.S.A., § 56.

The reason for the rule of exclusion lies in the tendency of triers of fact to give excessive weight against the accused respecting any specific illegal activity. It further tends to confuse the jury concerning the main issue of guilt or innocence of the offense charged and calls upon the accused to account for past wrongdoings for which he is not being tried. The main thrust of such evidence, such as other unrelated wrongful acts of the accused, is to pollute the minds of the jury against the defendant. State v. Garceau, supra. "If such testimony should be admitted, the defendant might be overwhelmed by prejudice, instead of being tried upon the evidence affirmatively showing his guilt of the specific offense with which he is charged." City of Topeka v. Harvey, 1961, 188 Kan. 841, 365 P.2d 1109.

In civil cases, facts pertaining to family relationship of a party to an action, such as the marital status of the party, when having no legitimate bearing upon the issues involved in the case, have been generally held inadmissible in evidence at trial and deemed to constitute reversible error when admitted over objection. Pennsylvania Company v. Roy, 1880, 102 U.S. 451, 26 L.Ed. 141; Baltimore & O. R. Co. v. Camp, 1897, 6th Cir., 81 F. 807; Maynard v. Oregon R. & Nav. Co., 1904, 46 Or. 15, 78 P. 983; Sanchez v. Stremel, 1964, 95 Ariz. 392, 391 P.2d 557, 10 A.L.R. 3d 1324; Louisville & N. R. Co. v. Binion, 1894, 107 Ala. 645, 18 So. 75; Sesler v. Rolfe Coal & Coke Co., 1902, 51 W.Va. 318, 41 S.E. 216; 29 Am.Jur.2d, Evidence § 437.

The evidence elicited on cross-examination in the instant case tended to show that the defendant, although married, was running around with women and had no relevancy whatsoever to the charge of assault with motor vehicle with intent to kill William Thurston. Its natural and inherent effect would be to create antipathy in the jury against the defendant and as such was prejudicial. See, People v. Gougas, 1951, 410 Ill. 235, 102 N.E.2d 152, 28 A.L.R.2d 852; State v. McCreary, 1966, 82 S.D. 111, 142 N.W.2d 240.

■ In order to mitigate the effect of the erroneous admission of his marital status, the defendant upon redirect attempted to explain that his marriage was on the verge of being dissolved by divorce and that he was separated from his wife whom he accused of running around herself and who, so the defendant said, was about to remarry another person. The State sought to destroy the defendant's explanation by introducing over objection the divorce decree which showed that defendant's wife obtained the divorce on grounds of cruel and abusive treatment. The defendant had the right to mitigate, if he could, the prejudicial effect of the erroneously admitted evidence without losing the force and effectiveness of his objections thereto. The State's initial error was not cured by defendant's submission of evidence in rebuttal. State v. Gress, supra; Richardson v. Farmers Union Oil Company, 1957, 131 Mont. 535, 312 P.2d 134.

The defendant was charged with the crime of assault upon William H. Thurston while armed with a dangerous weapon, to wit, an automobile, with intent unlawfully and willfully to kill and slay. The issue of intent or design was the most important one around which all the other issues converged. The defendant denied the accusation and asserted that the physical contact between the car and Thurston was by accident. In all practicality his defense depended upon how much weight the jury would give to his testimony. Defendant's veracity would for all practical purposes settle the matter. How the jury would have resolved the issue of the defendant's guilt or innocence had the impact of the defendant's marital status not been with them in their deliberations is at best a matter of conjecture. Under the circumstances the defendant's right to a fair and impartial trial compels us to set aside his conviction and afford him a new trial.

Other points of error have been assigned but need not be considered.

The entry will be

Appeal sustained. Case remanded to the Superior Court for a new trial.

POMEROY, J., did not sit.