## State of Vermont v. Ray L. Rebideau

[321 A.2d 58]

No. 141-73

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed June 4, 1974

*Kimberly B. Cheney,* Attorney General, *William T. Keefe,* Assistant Attorney General, and *Paul F. Hudson,* State's Attorney, for the State.

*John J. Welch, Jr., Esq.,* Rutland, for Defendant.

**Keyser, J.** The defendant was indicted by the grand jury in Windsor County for murder in the first degree of Raymond Lestage to which he pleaded not guilty. On a motion for change of venue, his case was transferred to the Addison County Court. A trial by jury, at which defendant did not testify, resulted in a verdict and judgment of guilty. The case arrives here by way of mandatory statutory appeal.

One Frank J. Berard, Jr., was convicted in Windsor County Court in a trial by jury of the offense with which the defendant here is charged. Our determination of the appeal in that case is to be found in *State* v. *Berard,* 132 Vt. 138, 315 A.2d 501 (1974). As the state's evidence in that case is substantially similar to the evidence to be reviewed here, reference to the *Berard* case may be had for the general background facts of the incident out of which the present appeal arises.

Defendant's first claim of error arises out of the examination of a witness, Joseph Bartlett, by the State's Attorney, in the course of which the following dialogue took place:

> State: Were you acquainted with Ray Rebideau also on that day?
>
> Bartlett: Yeah, I think so.
>
> Q: How did you know him?
>
> Bartlett: I knew him from prison, and I knew him from living there.

Bartlett, who had rented apartments to both the defendant and Berard, had found one of the murder weapons, a .22 H & R pistol, in a wood pile on his property two or three days after the homicide.

Bartlett's testimony indicating defendant's prior criminal record was not admissible for any purpose brought to our attention by the parties. Such evidence, by raising an inference of bad character or criminal tendencies in the defendant, may have the effect of so coloring the jurors' attitudes as to remove the presumption of innocence with which

the defendant first comes clothed, and of placing his past character on trial, rather than his involvement in the act charged. However, the burden of establishing such prejudice as to warrant a mistrial is upon the defendant here. *State v. Berard, supra.*

The record presents no question of improper conduct on the part of the State in the line of inquiry which led to the inadmissible disclosure. *Cf. State v. Jackson,* 127 Vt. 237, 246 A.2d 829 (1968). The court found that the remark was inadvertently made and came as a surprise to the State. Defendant makes reference to a duty of the examining counsel to maintain effective control of his witness. However, such a duty cannot arise where there has been no opportunity to exercise it. The sole question to be considered is whether the admitted testimony was, under the circumstances, so prejudicial as to deny the defendant a fair trial.

At the conclusion of Bartlett's testimony, defendant moved for mistrial. The jury was returned to the jury room while a discussion of the motion between the court and counsel ensued. Upon the jury's return, the court directed the jurors to disregard Mr. Bartlett's testimony that he had met the defendant in prison. These instructions were again made in the court's final charge to the jury. No other reference to the improper testimony was made by either of the parties. The present case is distinguishable from *State v. Garceau,* 122 Vt. 303, 170 A.2d 623 (1961), in which the trial court made no attempt to caution the jury at the time the objectionable testimony was entered, and from *State v. Shuttle,* 126 Vt. 379, 230 A.2d 794 (1967), in which testimony of defendant's prison record was twice disclosed on direct examination, and the State sought to take advantage of the testimony on summation.

In fact, we can find no fault on the part of counsel nor abuse of discretion on the part of the court in the introduction of this testimony or the subsequent attempts to cure. It is true, as we noted in the *Garceau* case, *supra,* 122 Vt. at 307, that:

> The harm, once done, is not necessarily erased nor the error corrected by a subsequent charge to the jury to disregard it. Indeed, it may well be that irreparable prejudice has been caused before the court can inter-

vene, and thereafter any attempt to remove it from the case is futile. [Citations omitted.]

However, the court's denial of mistrial was in effect a ruling that no such irreparable prejudice had occurred. That ruling will only be overturned if it is found to be in abuse of the trial court's discretion.

Prejudice is to be determined on the facts of each case, *State* v. *Jackson, supra,* and to be considered within the context of the entire proceedings. *Donnelly* v. *DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868 (1974). One factor to be considered is whether there exists "overwhelming evidence" of guilt independent of the erroneous testimony in order to negate "a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman* v. *California,* 386 U.S. 18, 23 (1967); approved in *Harrington* v. *California,* 395 U.S. 250 (1969).

The United States Supreme Court had occasion to deal with some other factors bearing on prejudice in a recent case involving improper prosecutorial remarks in closing argument. *Donnelly* v. *DeChristoforo, supra.* The Court there noted that the remarks made were subject to conflicting inferences, and did not involve the introduction of specific misleading information; further, that they provided but one moment in what was an extended trial, followed by specific disapproving instructions from the trial court. The Court thereupon concluded that the remarks, in the context of the entire trial, were not sufficiently prejudicial to violate defendant's due process rights.

Here, as in the *Berard* case, *supra,* extremely strong evidence of guilt had been introduced at the time of the motion for mistrial, including the testimony of the key prosecution witness, Linda Badore. Bartlett's statement, while clearly giving rise to the inference that the defendant had at one time been in prison, gave no indication that he was there for any particular crime or even that he was there in an incarcerated status. Without suggesting the seriousness of any prior crime, or the multiple incarcerations of a hardened criminal, as in *Garceau, supra,* Bartlett's remark could have only a minimal tendency to convey to the jurors that sense of a "vicious criminal record" which provides the reason for the exclu-

sionary rule. *Garceau, supra,* 122 Vt. at 306. These circumstances, along with the voluminous nature of the testimony taken in the course of the trial, lead us inexorably to the conclusion that Bartlett's chance remark could have had no lasting and significant impression on the jurors' minds. We therefore find no error in the denial of mistrial in the court below.

 Defendant also urges the prejudicial effect of the introduction of color photographs of the deceased. The argument with respect to the photographs is simply put; the relevance of such photographs must outweigh their potentially inflammatory effect if they are to be admitted into evidence. *State* v. *Oakes,* 129 Vt. 241, 276 A.2d 18 (1971). This determination is a matter for the discretion of the trial court. *Id.* Color photographs require no more stringent standard of admission than is the case with black and white photographs. *Killary* v. *Chamber of Commerce,* 123 Vt. 256, 186 A.2d 170 (1962).

The State's position is that the photographs were necessary to explain the testimony of Dr. Ronald Wright, a Regional Medical Examiner for the State, who performed the autopsy on the deceased. His testimony was introduced to corroborate the testimony of Linda Badore that the defendant shot the victim, Lestage, in the back with a shotgun as the first in a series of shots. We are satisfied from an examination of the record and the disputed exhibits that their admission was not improper as a matter of law. We therefore find no error in the lower court's exercise of discretion.

██ A claim of prejudicial evidence arises out of the fact that defendant's physical appearance changed somewhat between the night of the homicide and the time of trial. The State sought to establish defendant's whereabouts prior to the shooting in corroboration of the testimony of Mrs. Badore, by asking numerous witnesses to describe the man they saw in the company of Frank Berard and Mrs. Badore at various drinking places in Burlington on the night of the shooting. Defendant was variously described as of medium build with long, shoulder-length hair with a very thin mustache coming across the lip and down, or with "long black hair, a heavy

dark mustache, black hair, and dark clothes." He appeared at trial in a suit, clean-shaven, and with closecropped hair.

Defendant contends here as he did at trial that the proper means of identification was to ask each witness to point out in the courtroom the person whom they saw accompanying Frank Berard on the night in question. The State contends that, in light of the fact that defendant was unknown to the various witnesses prior to the night in question, and because of his changed appearance at trial, courtroom identification would have been difficult. Defendant offered to stipulate to his presence on that night in the company of Berard and Mrs. Badore, charging that repeated references to his long hair and mustache could have a prejudicial effect on the jury. The State declined to so stipulate.

The parties agree that the proper means of identification is a matter for the trial court's discretion. Defendant's position is dependent on the prejudicial effect of the identification, as elaborated by his argument that, even with today's liberal attitudes towards a person with long, shoulder-length hair and a mustache, people still have a tendency to allow themselves to associate this type of appearance with one who has an inclination towards criminality, violence and untrustworthiness. We find this argument speculative in the extreme. Defendant presents no other basis for his claim of prejudice. Accordingly, we find the claim without merit.

Defendant next asserts that the proofs offered at trial were in fatal variance with the crime charged in the indictment. The effect of such a variance, if demonstrated, would be to deny defendant his right to know upon what specific acts of his and upon what theory the State relies in charging him with criminal conduct, in order that he may properly meet the charge. State v. Coomer, 105 Vt. 175, 163 A. 585 (1932). Defendant argues that the evidence, at best, was sufficient to convict him as an accessory aiding in the commission of a felony, pursuant to 13 V.S.A. § 3, and not as a principal committing murder in the first degree as was charged; further, that the two are separate and distinct offenses.

We have held that the presence of a preconceived plan with a common criminal objective, plus participation in its accom-

plishment to some substantial measure, is sufficient to support a charge that the participant acted as a principal. *State v. Sears*, 130 Vt. 379, 296 A.2d 218 (1972). Defendant would distinguish the *Sears* case, in which the defendant was charged as an accessory before the fact pursuant to 13 V.S.A. § 4, on the ground that 13 V.S.A. § 4 represents a departure from the common law as to accessories and principals, while 13 V.S.A. § 3 leaves the common law rule intact. (It is the defendant's position that, under the common law, the felony of an accessory is a distinct crime from that of a principal.) 13 V.S.A. § 3 provides that a "person who aids in the commission of a felony shall be punished as a principal". 13 V.S.A. § 4 provides that a person may be informed against or indicted, tried, and convicted, as well as punished, as a principal if he is an accessory before the fact.

However, defendant's resort to the common law rule is to no avail in the present instance. We noted in *Sears*, discussing 13 V.S.A. §§ 3 and 4 and the law of accessories and principals, that "the historical distinctions between principals of the first degree and 'aiders and abettors' or principals of the second degree have not been a part of the law of Vermont." *Id.* 130 Vt. at 382; *Cf. State v. Buzzell*, 58 N.H. 257, 42 Am. Rep. 586 (1878). We also noted, in reference to the language of 13 V.S.A. § 3 that "[s]ince merely 'aiding' is a broader concept than 'aiding and abetting' special pleading may be necessary in some cases." *Id.* We do not here have such a case. *Cf. State v. Mecier*, 126 Vt. 260, 227 A.2d 298 (1967).

In the trial below, evidence was submitted to the following effect. The defendant and Frank Berard spent the evening of August 12, 1972, together in various Burlington bars. Later, in the evening they were joined by the victim, Lestage, and Linda Badore. Before meeting Lestage, defendant loaded the .22 pistol for Berard and placed the shotgun shells in the glove compartment of the Lincoln. The four departed Burlington in the vehicle sometime after midnight. Berard stopped the Lincoln off the Interstate in Royalton, at which time he and the defendant got out, went to the rear of the car, and returned after two or three minutes.

Later, when the car stopped a second time, Lestage got out and stood a short distance away with his back to the vehicle. Mrs. Badore heard a shot, turned around, and saw the de-

fendant holding the shotgun out the back window at an angle and Lestage falling forward. Berard got out of the car and went where Lestage had been. The defendant turned to Mrs. Badore and said, "Don't worry." More shots were fired and then Berard returned to the car and took the shotgun from the defendant saying he had to finish it. The defendant and Mrs. Badore drove the Lincoln up the road and back, during which time another shot was heard coming from the cemetery.

The autopsy disclosed two shotgun wounds from behind, one to the left back and shoulder region and one to the left side of the head, as well as a number of nonfatal bullet wounds. The medical examiner testified that the head wound was the cause of death, and that the shoulder wound led to extensive loss of blood and could have caused death over a long period if medical attention were not forthcoming.

There was further evidence tending to show the defendant's participation in the subsequent concealment of the crime, as well as conversations which occurred between the defendant, Mrs. Badore, and Berard. Defendant wiped off Lestage's suitcase with a T-shirt and threw the suitcase and T-shirt out the car window as he, Mrs. Badore, and Berard proceeded south again on the Interstate. In Rutland, defendant made a phone call in an unsuccessful attempt to sell the Lincoln. Additional recitation would serve no useful purpose here. Suffice it to say that the record discloses sufficient evidence to support the charge that defendant acted as a principal in the Lestage homicide under the rule set out in *State* v. *Sears, supra.*

Defendant makes two claims of error in the court's charge to the jury. The first relates to the following instruction:

> The law does not require that each particular incriminating fact which may aid the jury in determining that the accused is guilty shall be proved beyond a reasonable doubt. The doubt which will justify an acquittal is not a doubt of any particular fact but a doubt on the evidence that he is not guilty.

It is defendant's position that the charge, properly made, would have omitted the word "not" from the phrase "a doubt on the evidence that he is not guilty," and that, as the charge

was made, the jury had to justify an acquittal on doubts of the defendant being not guilty rather than on doubts of defendant's guilt. No other question is raised as to the propriety of the content of the charge. See *State* v. *Green*, 126 Vt. 311, 228 A.2d 792 (1967).

The charge should be full, fair and correct on all issues, theories and claims within the pleadings, so far as the evidence requires. *Morse* v. *Ward*, 102 Vt. 433, 150 A. 132 (1930). However, the charge must be taken as a whole and not piecemeal. If as a whole, it breathes the true spirit and doctrine of the law and there is no fair ground to say that the jury has been misled, it ought to stand. *State* v. *Adams*, 131 Vt. 413, 306 A.2d 92 (1973).

The interpretation of the court's charge for which defendant contends would be based on a premise that defendant must prove his innocence beyond a reasonable doubt. The charge was delivered as part of a general charge on the burden of proof in which the court also repeated the instruction that

> the burden is upon the State to make out and establish all of the essential elements of the crime charged against the Respondent beyond a reasonable doubt. The Respondent does not have to prove anything.

While the jury may have found the complicated grammar of the disputed charge somewhat confusing, we think that any prejudicial effect of this charge—in light of the clear, and familiar, proposition that the state has the whole burden of proving its case beyond a reasonable doubt—is lacking.

■ The other exception defendant makes to the trial court's instructions is that the court should have charged that if the jury could find an hypothesis which was reasonable, and inconsistent with guilt, then the jury could return a verdict of not guilty. Such a charge, if ever essential in this jurisdiction, is required only in cases where the evidence is wholly and entirely circumstantial. *State* v. *Bruce*, 126 Vt. 367, 231 A.2d 107 (1967).

The bulk of the state's case is based on the direct eyewitness testimony of Linda Badore, both as to the events leading up to the homicide, the homicide itself, and the subsequent concealment. Defendant contends that the case is circumstantial to the extent that there is no evidence of a revelation

by defendant to anyone that he intentionally participated in the unlawful murder of Lestage and no testimonial evidence that anyone saw defendant, with their own eyes, shoot anyone. This contention falls far short of demonstrating a wholly circumstantial case, as called for by the rule of *State* v. *Bruce,* *supra.* We find the jury charge without error.

Defendant filed a motion here on January 16, 1974 for a new trial on the basis of newly discovered evidence. A similar motion was denied in the related case of *State* v. *Berard,* *supra.* Our basis for denial of the motion in the *Berard* case is applicable here; such a motion must be considered in the first instance in the court in which the action was tried.

Considering the issues raised by defendant, we find no legally sufficient basis for reversal of the judgment below.

*Judgment affirmed. Let execution of the sentence be done.*