## State of Vermont v. Mansur Kerwin

[340 A.2d 45]

No. 99-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 3, 1975

*Michael J. Sheehan, Esq.*, Windsor County State's Attorney, White River Junction, for the State.

*Robert J. Kurrle, Esq.*, Montpelier, for Defendant.

**Smith, J.** The defendant, Mansur Kerwin, was found guilty by jury verdict on January 11, 1974, in the Vermont District Court, Windsor Circuit, Unit No. 6, on a four count criminal information charging him with recklessly engaging in conduct that placed other persons in danger of death and serious bodily injury in violation of 13 V.S.A. § 1025. From the verdict and subsequent judgment of the lower court the defendant has taken his appeal here.

On September 20, 1972, the four complainants, Roland J. Hamel, Franklin E. Crowe, Donald Cutter, Jr., and Edgar La-Belle were coon hunting, with a dog, at or near the residence of the defendant in a remote area of Norwich, Vermont. Coon hunting is done at night, and the complainants used a four wheel vehicle to follow a little used town road, with the Plott hound used for this hunt ranging ahead of the vehicle. When the hound trailed and treed a coon, the complainants would follow the dog and shoot the coon, using a .22 pistol or re-

volver. On the night in question they had just shot the second coon of the hunt when, according to their complaints, three shots from a small caliber firearm as well as two blasts from a shotgun were fired in their direction by some person unknown. These shots, according to the testimony of the complainants, sent bullets and pellets through the brush and trees, under which they immediately took cover. After shouting to make their presence known to whomever had fired the shots, they cautiously returned to their vehicle and continued to follow the back road until their way ahead was blocked by a vehicle parked in the narrow roadway.

This vehicle turned out to be a state vehicle used by the defendant, who lived with his wife and then visiting son in a trailer located nearby. A confrontation took place between the complainants and the defendant, who was armed with a pistol, backed up by his son, who carried a shotgun. This confrontation became heated and argumentative.

The defendant apparently believed that the complainants were illegally hunting deer on his premises. He admitted firing the shots that they had heard, but denied that the shots were fired at them, contending that they were fired at a forty-five degree angle into the air. Eventually the defendant moved his vehicle, the complainants left and related the incident to a game warden and then to a state trooper. These officers went to the trailer of the defendant about midnight and took statements from him regarding his version of the incident.

What complicates the issues before us is that the defendant was charged with two separate offenses. His first of two jury trials was also for a 13 V.S.A. § 1025 offense, the complaint being based upon the charge that he stuck a pistol in the stomach of Crowe, and threatened him, at the time that the complainants and the defendant had their encounter near the parked vehicles. This trial, in which the defendant was represented by able counsel, resulted in a verdict of not guilty.

The case now before us for consideration was based on the charges for firing the shots. The defendant, possibly for financial reasons or out of the belief that an acquittal on one charge resulting from the September 20th incident would insure an acquittal on another, chose to represent himself. Self representation, permissible under the law, rarely provides competent and lawyer-like representation. Although the trial court must

be commended for its careful instructions to the defendant on how to conduct his case, the record discloses that this self representation, to a large extent, is responsible for the questions raised here. After the guilty verdict was returned, the defendant employed counsel for the purpose of presenting various motions to the trial court as well as the presentation of this appeal.

The first question is rather novel. The defendant attacks himself, contending that his pro se performance constituted ineffective assistance of counsel denying him the right to a fair trial. This and other questions presented need not be considered, as our resolution of other issues will require a reversal of the judgment below.

The defendant complains that the State's Attorney propounded prejudicial questions during his cross-examination.

> "Q. You testified that you have a temper don't you?
> A. I don't know a human being that doesn't.
> Q. But you have an unusual one?
> A. No.
> Q. Isn't it twice you threatened me, twice this afternoon."

The reference in the last question was apparently to an alleged conversation between the defendant and the State's Attorney outside the courtroom. Although the question was not objected to by the defendant, it was, in effect, testimony by the State's Attorney as to acts of the defendant which would have been inadmissible under proper objection and was prejudicial to the defendant.

The record of the prior trial ending in defendant's acquittal is before us and shows that there the trial court had scrupulously kept from the jury any evidence of the September 20th incident that did not relate to the "gun in the stomach" charge. The defendant asserts that in the second trial the court allowed references to the earlier charge for pointing a gun at one of the complaining witnesses to be admitted into evidence to his prejudice.

One of the complaining witnesses, Mr. Hamel, in answer to the State's Attorney's question, "Do you know how long you were in front of the Kerwin residence?" replied, "Ten or fifteen minutes. It felt like a lot longer with that pistol pointed at you, incidentally there was another man there with a shot gun." Another reference to the subject of the first trial came when, under cross-examination, the state trooper, when asked what he investigated, responded, "Four people were shot at and when they tried to get out of the woods they had a pistol stuck in the stomach of one of them."

The defendant was aware that the introduction of evidence relative to the first charge upon which he had been tried and acquitted was improper. While his objections to this testimony were couched in rather inept language, they were sufficient to apprise the court of the evidence objected to and the reason for the objections. The trial court overruled the objections. Such rulings were in error, for the defendant had been acquitted of the first charge, and evidence of it was not proper for the consideration of the jury trying him on the second charge.

There can be no doubt that such testimony influenced the thinking of the members of the jury. They returned some time after the original charge had been given them by the trial court, and the foreman inquired, "I think the question is, can we use the incident that occurred at the cars in the road as evidence to find guilt or innocence of the defendant?" At that time the trial court correctly charged that they could not consider the incident of the gun in the stomach.

Whether or not this supplementary instruction to the jury could remedy the wrongful admission of evidence and how the jury would have resolved the issue of the defendant's guilt or innocence in the absence of such evidence is subject to conjecture. *State* v. *Ovitt*, 126 Vt. 320, 324, 229 A.2d 237 (1967); *State* v. *Garceau*, 122 Vt. 303, 307, 170 A.2d 623 (1961). "The harm, once done, is not necessarily erased nor the error corrected by a subsequent charge to the jury to disregard it." *State* v. *Garceau, supra*. This Court found such erasure or correction in *State* v. *Rebideau*, 132 Vt. 445, 448–49, 321 A.2d 58 (1974), where the prejudicial testimony was but one isolated, improper answer in a long trial in which there was, independent of such testimony, overwhelming evidence of

guilt, and the jurors had been properly instructed at a much earlier time. We will not do so here under the differing circumstances that prevailed at the trial below.

Furthermore, this trial was not otherwise error free.

■ During the cross-examination of Mrs. Kerwin, the State offered in evidence a statement given by Michael Kerwin, son of the defendant, adopting the rather unusual procedure of first reading the statement and then offering it in evidence. This was objected to by the defendant as being hearsay. At the time of the first trial, Michael Kerwin had been present and had testified; however, the statement was not admitted because deemed "confusing." The defendant had requested that Michael be subpoenaed in this second trial, Michael being stationed at a military post at some distance from Vermont, and the request was refused.

We think that the statement of Michael, as here admitted, was hearsay, pure and simple, he not being under oath or having been subject to the test of cross-examination. *In re Petition of Trustees of Westminister*, 108 Vt. 352, 359, 187 A. 519, (1936).

■ The defendant next objects to the admission of testimony by Mr. Crowe. Mr. Crowe testified that a Dr. Janiewicz, for whom the defendant worked as a meat inspector in the State Department of Agriculture, asked him if he would attempt to get the charges against the defendant dropped if the defendant would apologize to him. While it does not appear that the defendant made an objection to such evidence as hearsay, which it clearly was, he did request time to call Dr. Janiewicz to have him appear as a witness. The court denied this request as immaterial, but allowed the testimony of Crowe, relative to his conversation over the telephone with Dr. Janiewicz, to remain on the record. In a post-trial hearing based on the defendant's motion for a new trial, Dr. Janiewicz denied telling Crowe that the defendant admitted his guilt and would apologize.

As the State argues, it is true that many of the claimed errors in the trial advanced here were not properly objected to by the defendant. However, the defendant did make his objections known to the introduction of evidence relative to the

"gun in the stomach" incident upon which he had been formerly tried and acquitted, as well as to the admission of the statement given by his son to the state police officer. All of such objections should have been sustained.

The record before us, with its combination of errors and irregularities, convinces us that the defendant did not have a fair trial, and that his rights were impaired to his legal detriment. *State* v. *Ovitt, supra,* 126 Vt. at 328.

*Judgment reversed and the cause remanded for a new trial.*