# STATE v. PHILIP BEDARD.

## GENERAL TERM, 1892.

*Rape. Evidence. Distress of prosecutrix. Leading question. Alibi.*

1. The prosecution being for rape, a witness for the State testified that he was present at the time of the assault, and identified the respondent as one of the assailants; also that he saw the respondent the morning after the assault in company with several other persons, and then recognized him. It further appeared from his testimony that upon this latter occasion some one asked him if he recognized any of the assailants among those then present, to which he replied in the negative, and the respondent claimed that this tended to discredit his testimony. *Held*, that he might then state in explanation that the reason why he so replied in the negative was that he feared the respondent, if warned, would escape arrest.

2. A witness who saw three young men, whom he did not know, near the place of the assault at about the time it was committed, may state that upon the following day he "identified" the respondent and another, while on their way to the police station, as two of these young men, the word identified being construed to mean no more than recognized.

3. In prosecutions for rape the State may show mental and physical distress of the prosecutrix immediately after the assault, as that she cried continuously.

4. A witness who testified that he saw three persons together the evening of the assault near the place where it occurred, and that he spoke with and recognized the respondent as one of the three, may further state that he saw the respondent elsewhere during the afternoon of the same day in company with two boys.

5. To render the admission of a leading question reversible error, it must affirmatively appear that it was admitted as matter of law.

6. The respondent sought to establish an alibi by proving that he was at a certain house during a considerable part of the evening in question. *Held*, that the trial court properly refused to permit him to show in full the conversations claimed to have been had on that occasion.

7. The magistrate before whom was held the joint preliminary examination of the respondent and his two alleged partners in the crime, having testified that the prosecutrix then stated the color of the clothes worn by the respondent at the time of the assault differently, the State might inquire upon cross-examination whether she then attempted to identify the respondent in any other way, and to show that she did so by pointing him out as he sat with the others.

8. When assaulted the prosecutrix and one Gonyeau were on their way from Burlington to the village of Winooski, where she resided, and had turned from the main highway into a less traveled road which ran by Athletic Park. Counsel for the respondent was proceeding to argue to the jury that the prosecutrix and Gonyeau were going to the park for an improper purpose, when the court stopped him, and ruled that there was no evidence to that effect in the case. *Held*, no error, since the exceptions showed that respondent's counsel were permitted to argue that the physical condition of the prosecutrix, as revealed by a medical examination, was accounted for by her previous intimacy with Gonyeau.

Indictment for rape. Trial by jury at the April term, 1891, Chittenden county, THOMPSON, J., presiding. Verdict of guilty. Exceptions by the respondent. The case appears in the opinion.

*J. A. Brown* and *Henry Ballard* for the respondent.

It was error to permit the State to show that the prosecutrix cried all the way home. *State* v. *Davidson*, 30 Vt. 377 ; *Cleveland R. R. Co.* v. *Newell*, 48 Vt. 636 ; Whar. Crim. Ev., §§ 262, 263, 268, 271, 272, and notes ; *Lamoille N. A. & C. R. Co.* v. *Wood*, (Ind.) 12 Western Rep. 311.

The respondent should have been allowed to show the conversations tending to establish his alibi. Whart. Crim. Ev., § 743; *Hill* v. *North*, 34 Vt. 604; *Earl* v. *Earl*, 11 Allen 1; 1 Greenl. Ev., § 123.

*J. E. Cushman*, State's Attorney, and *Seneca Haselton* for the State.

Evidence that the prosecutrix cried all the way home was admissible. *Bean* v. *People*, 16 N. E. 656; *People* v. *Brown*, 53 Mich. 531; *Higgins* v. *People*, 58 N. Y. 377; *Rex* v. *Clarke*, 2 Starkie 214; *Knight* v. *Smythe*, 57 Vt. 529.

Evidence of detailed conversations bearing upon the alibi claimed was rightly excluded. *Fiske* v. *Cole*, 25 N. E. Rep. (Mass.) 608; *Johnson* v. *Day*, 78 Me. 224.

MUNSON, J. The respondent is charged with having committed the crime of rape upon the person of one Mary Pratt. The State claimed that just before the commission of this offence Miss Pratt and one Gonyeau, who was accompanying her, were attacked by the respondent and two persons named Blow and Wilkins. Gonyeau, being called as a witness for the State, identified the respondent as one of the persons who made this assault, and also testified that on the morning following the assault he saw the respondent and Blow at Winooski, and then recognized them as two of his assailants. It further appeared from his testimony that on this occasion some one asked him if he recognized any of the assaulting party among the persons present, and that he replied in the negative. At some stage of the evidence the respondent claimed that what Gonyeau said on this occasion tended to impeach his testimony that he then recognized the respondent as one of his assailants, and also tended to discredit his identification of the respondent in court. The

State was thereupon permitted to obtain from the witness the explanation that he answered as he did on the occasion referred to because he was afraid if he said anything in particular at that time the respondent would get away.

It does not directly appear in what stages of Gonyeau's examination the different portions of this testimony were given. As the exceptions stand it may, perhaps, fairly be claimed that they were all parts of the direct examination. But it does distinctly appear that the explanation was permitted in view of a claim made by the respondent that the statement of the witness at Winooski tended to discredit his subsequent testimony and identification.. Unexplained, it certainly had this tendency; and we think that, even if the evidence of the statement came in upon direct examination, it was proper to permit the State to meet the respondent's claim by showing how the statement came to be made. The respondent was not entitled to insist that this denial, which may have been necessary to prevent his escape from arrest, should be suffered to discredit the prosecution for the want of an explanation. And if the respondent's claim had not been advanced as it was, the right of the State to offer the explanation would perhaps have been the same, because of the probability that if the statement remained unexplained an injurious inference would be suggested in argument, or arise in the minds of the jury without suggestion.

It appeared from the testimony of one Flanagan that about the time, and not far from the place of the alleged assault, he saw three young men whom he did not then know. It appeared from other evidence that on the day following, the respondent and Blow were taken from the police office to the jail in a wagon; and Flanagan was permitted to testify that he saw the two men in this wagon, and that he then identified them as two of the persons whom he had seen the evening before. It can hardly be questioned that it was proper for the State to establish by this witness that the per-

sons who were shown by other testimony to have been Blow and the respondent were two of three persons who were together near the place of the alleged assault about the time it was claimed to have occurred. But the respondent insists that evidence that the witness "identified" these persons was evidence that he then pointed them out, or otherwise designated them, to some one as having been so observed. Whether this would have been error, it is not necessary to consider ; for we think the force of the testimony, as shown by the exceptions, was simply that the witness then recognized the two persons in the wagon as two of those whom he had previously seen.

The State was permitted to show that while going home after the alleged assault the prosecutrix cried continuously. We think the ruling was correct. Courts are not entirely agreed as to the precise ground upon which such evidence is received, but its admission has been sustained in several well considered cases. It may perhaps properly be said that indications of distress are in the nature of a complaint. They ordinarily precede and lead up to the making of a definite complaint. Evidence of them need not be rejected on the ground that they are easily simulated, and are in the nature of evidence made by a party in his own favor, for the same is true of the complaint itself. Proof of the complaint is received in disregard of the general rules of evidence, because of the peculiar nature of the charge, and of the suspicion with which the law regards the testimony of the prosecutrix. The law considers that the prosecutrix stands in need of corroboration irrespective of the defence, and so permits this corroborative fact to be shown in the opening. It is clearly within the reason of this exception for the State to show that from the time of the alleged outrage until the making of the complaint the appearance and conduct of the prosecutrix were consistent with her claim. Evidence tending to show physical prostration or mental distress would thus be

admissible.  And the physical and mental condition of the
prosecutrix may often tend to explain what might otherwise
be deemed a suspicious delay in making complaint.  The
weight to be given to the fact of complaint depends greatly
upon the promptness with which the complaint is made, and
in determining how much a delay shall detract from the
value of this evidence the condition of the prosecutrix may
be an important consideration.  In whatever view the ques-
tion is examined, it seems desirable that the bearing of the
prosecutrix immediately after the supposed occurrence be
submitted to the consideration of the jury.  In *The People
v. Batterson*, 50 Hun, 44, it is said to be proper to show
"the condition of the prosecutrix, mental and otherwise,
immediately after the offence, in order that the jury may
judge more accurately as to the credit that should be given
to her testimony."

The witness Spaulding testified that he saw three persons
together near the place of the alleged offence on the evening
it is claimed to have occurred, and that he spoke with and
recognized one of them as the respondent.  He was then
permitted to testify that during the afternoon of the same
day he had seen the respondent elsewhere in company with
two boys.  The fact that the witness had seen the respond-
ent shortly before, and in the day time, would lessen the
probability that he was afterwards mistaken as to his iden-
tity.  And the fact that when seen during the afternoon he
was one of a party of three may have had some tendency to
fix his attention upon the respondent when afterwards seen
under similar circumstances, and thus lessen the chances of
mistake.  But if the materiality of this feature of the evi-
dence is not apparent, we do not consider its admission re-
versible error.

The State proposed to inquire of the chief of police
whether before proceedings were instituted Mary Pratt made
any complaint to him about having been ravished.  The

question was objected to upon several grounds which are not now urged, and also because leading in form. The court ruled that the State might show the nature of the . complaint made to the witness, but not the details of it, nor the name of the person complained of; and the question was then answered. It does not appear that the court allowed the question against the objection that it was leading, as matter of law; and as the form of the question is a matter within the discretion of the court, the claim of error in this regard cannot be sustained.

The respondent sought to establish an alibi by showing that he and his associates were at the house of Wilkins' father for a considerable time on the evening in question. In support of such claim the respondent offered to show in full the conversations claimed to have been had on that occasion, and excepted to the refusal of the court to permit this. It is insisted that whatever is said during the period of the alibi is a part of the *res gestae;* that every part of a conversation is of some effect in excluding the possibility that the occasion testified to was any other than the one claimed; that the force of the evidence depends in a great degree upon the details embraced in it; and that to exclude the particulars of a conversation is to debar the respondent from presenting his claim in the most convincing manner. We think these considerations are sufficiently regarded in permitting a respondent to show in a general way what conversations were had and what they were about; and so far as we know the practice of courts has been in accordance with this view. It is further urged in support of this offer that a recital of the conversations had would be the best possible proof of the time spent in such conversations. But it is well understood that the witness to a conversation of considerable length can seldom give more than a comparatively brief synopsis of what was said; and in view of this it may be questioned whether the proposed method of determining the time spent would be more likely

to subserve the truth than the approved method of giving an estimate. If the claimed alibi extended over a considerable period, which was spent by the person setting up the alibi in successive conversations with several others, and if he himself were a witness in support of the alibi and could recall all that was said, the time taken in making out the alibi by the mouth of the principal witness would be coextensive with the duration of the alibi. It is obvious that this would be unreasonable and impracticable. In cases where the time was spent in doing something which it is practicable to do in court, no one would claim that the witness should be permitted to go through what he had done to establish the length of time he had been engaged in it. No more can it be held that a witness should be allowed to repeat in detail all that was said during the period as a measure of the time spent.

The judge of the municipal court before whom the respondent and Wilkins and Blow were taken for a preliminary examination was called by the respondent, and his testimony tended to show that the description the prosecutrix then gave of the color of the respondent's clothes was different from that given by her on the trial. In cross-examination the State was permitted to inquire whether she then attempted to identify the respondent in any other way than by this description, and to show that she did so by pointing him out as he sat with the others. The State had a right to pursue such a line of inquiry as would determine whether the apparent inconsistency of the prosecutrix might not be the result of a misapprehension of the witness as to which one of the three she was referring to when giving this description of clothing. No one would have questioned the propriety of asking the witness how he knew that the one described as having been so clothed was the one she called Bedard. The evidence given was no more than such a question would have called for. The effect of it was to make it more cer-

tain that it was of the respondent that the prosecutrix had
given this earlier and different description.   If it had ap-
peared that the one whom she called Bedard had not been
clearly and unmistakably designated to the witness, it might
well have been argued that he was mistaken as to the one
whose clothing on the evening in question she had thus des-
cribed.   The fact that this evidence may have had a tend-
ency to satisfy the jury that, even if mistaken as to the
clothing, she was able at that time to identify the man, would
not have justified the court in excluding the State from this
line of cross-examination.

In presenting the case to the jury, one of the respondent's
attorneys was proceeding to argue that the prosecutrix and
Gonyeau went to the park on this occasion for an unlawful
and wicked purpose, when the court stopped him, and ruled
that there was no evidence in the case tending to show that
they went there for such a purpose.   It is insisted by respond-
ent's counsel that they were thus prevented from arguing to
the jury that the physical condition of the prosecutrix might
have resulted from a voluntary connection had with Gonyeau
at the time and place of the alleged assault; and that what
the court said must have been taken by the jury as an asser-
tion that there was no evidence in the case upon which such
an argument could legitimately be based.   It appears, how-
ever, from another part of the exceptions, that respondent's
counsel were permitted to argue to the jury that the physical
condition of the prosecutrix, as testified to by Dr. Peck, was
the result of an improper intimacy between her and Gonyeau.
A majority of the court are of the opinion that it thus fairly
appears that counsel were permitted to argue that the inter-
course which produced this condition might have been had
with Gonyeau at any time previous to the doctor's examina-
tion, not excluding the occasion on which it is claimed this
offence was committed by respondent; and that it thus ap-
pears from a consideration of the exceptions as a whole that

counsel were not, by the interruption and ruling referred to, precluded from pursuing the line of argument indicated by what was being said at the time of the interruption, and that the jury could not, in view of this, have understood the ruling in question to have the scope now claimed for it.

*Judgment of guilty rendered upon the verdict, and sentence passed, and execution thereof ordered.*