2007 VT 113

**State of Vermont v. Robert L. White**
**State of Vermont v. James J. Kelley**
**State of Vermont v. Adam Corliss**

[944 A.2d 203]

Nos. 06-285, 06-435 & 06-436

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed November 9, 2007

512

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, *Henry Hinton*, Appellate Defender, and *Kelly Green*, Appellate Defender (On the Brief), Montpelier, for Defendant-Appellant (06-285).

· *Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendants-Appellants (06-435 & 06-436).

¶ 1. **Johnson, J.** In these consolidated cases, we are asked to determine whether our decision in *State v. Provost*, 2005 VT 134, 179 Vt. 337, 896 A.2d 55, should be given full retroactive effect. Each defendant exhausted his direct appeal prior to our decision in *Provost*. Defendants now ask this Court to reverse their sentences and remand for resentencing in accordance with the holding in *Provost*, which invalidated 13 V.S.A. § 2303 (amended by 2005, No. 119 (Adj. Sess.), § 2, effective May 1, 2006) as unconstitutional. We affirm the trial court decisions rejecting full retroactivity of the *Provost* decision and upholding defendants' sentences.

¶ 2. A brief recitation of the facts is sufficient for our analysis. Defendant White was convicted of second-degree murder and sentenced to life in prison without parole. At the time, sentencing for second-degree murder was governed by pre-amendment 13 V.S.A. § 2303(b), which limited the court to imposing a sentence of twenty-years-to-life imprisonment unless it found aggravating or mitigating factors justifying a different minimum term. In White's case, the court heightened the minimum sentence to life in prison without parole after considering eight aggravating factors and seven mitigating factors pursuant to pre-amendment 13 V.S.A. § 2303(d)-(e). The conviction and sentence were upheld on appeal. *State v. White*, 172 Vt. 493, 496, 782 A.2d 1187, 1189 (2001). After White's sentencing, this Court held that § 2303 violated the Sixth Amendment to the United States Constitution because "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Provost*, 2005 VT 134, ¶ 15 (quotation omitted). White moved the trial court for resentencing pursuant to Vermont Rule of Criminal Procedure 35, claiming that his sentence was illegal in light of the *Provost* decision. The court denied the motion, ruling that White had waived his claim under *Provost* because he had not raised it on direct appeal.

¶ 3. Defendants Kelley and Corliss were both convicted of first-degree murder. At the time of their sentencing, pre-amendment 13 V.S.A. § 2303(a) prescribed a sentence of thirty-five-years-to-life imprisonment for first-degree murder, unless the

court found that aggravating or mitigating factors justified some other minimum term. Kelley was sentenced to life in prison without parole based upon the court's finding of an aggravating factor, which he contested as unsupported by the evidence on appeal. We upheld the sentence in *State v. Kelley*, 163 Vt. 325, 326, 664 A.2d 708, 709 (1995). Corliss was sentenced to fifty-years-to-life imprisonment based on the court's finding of an aggravating factor. He likewise appealed, and we upheld the court's decision. *State v. Corliss*, 168 Vt. 333, 334, 721 A.2d 438, 439 (1998). After the *Provost* decision, defendants Kelley and Corliss filed a motion for correction of their sentences pursuant to Rule 35, arguing that their sentences were illegal under the *Provost* holding. The trial court denied the motion, finding that *Provost* does not apply retroactively on collateral review.

¶ 4. On appeal, White challenges the court's denial of his motion for correction of sentence, arguing both that the trial court erred in finding waiver of any *Provost* claim and that *Provost* should be applied retroactively to his case. Kelley and Corliss appeal denial of their motion for correction of sentence, claiming only that *Provost* should receive full retroactivity.

¶ 5. We limit our analysis today to defendants' main issue on appeal — whether our decision in *Provost* should be applied retroactively despite defendants' exhaustion of the direct appeals process. The question of a decision's retroactivity is a legal one, and therefore our review is nondeferential and plenary. *Vt. Alliance of Nonprofit Orgs. v. City of Burlington*, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305.

¶ 6. In *Provost*, the defendant was convicted of four counts of first-degree murder and challenged his sentence of four consecutive terms of life in prison without parole as violative of the Sixth Amendment to the United States Constitution. Under Vermont's then-existing-homicide-sentencing scheme, 13 V.S.A. § 2303, the court lengthened the defendant's minimum sentence from the presumptive thirty-five-years imprisonment to life without parole based on its finding of five statutory aggravating factors and no mitigating factors. *Provost*, 2005 VT 134, ¶ 14. We based our analysis of the sentencing scheme's constitutionality on the United States Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). See *Provost*, 2005 VT 134, ¶ 15. In *Apprendi*, the Court held that, excepting prior convictions, any fact that increases the penalty for

an offense beyond the prescribed statutory maximum must be proven to a jury beyond a reasonable doubt; otherwise, the penalty is unconstitutional under the Sixth Amendment. 530 U.S. at 490. Later, in *Blakely*, the Court clarified that the statutory maximum it referred to in *Apprendi* was "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted). Thus, we determined in *Provost* that the homicide-sentencing scheme was unconstitutional because it allowed the court to increase the maximum sentence allowed under § 2303(a), thirty-five-years-to-life imprisonment, to life in prison without parole on the basis of facts not found beyond a reasonable doubt by a jury. 2005 VT 134, ¶ 15.

¶ 7. Subsequently, the Legislature amended the homicide-sentencing statute to comply with Sixth Amendment protections by allowing courts, within their discretion, to sentence defendants convicted of first-degree murder to a minimum term of no less than thirty-five-years imprisonment and a maximum term of life, *or* life without the possibility of parole; and defendants convicted of second-degree murder to a minimum term of no less than twenty-years imprisonment and a maximum term of life, *or* life without the possibility of parole, if the murder was committed on or after the effective date of the new statute. 13 V.S.A. § 2303(a) (Cum. Supp. 2006); 2005, No. 119 (Adj. Sess.), § 2. For defendants convicted of a murder committed prior to the effective date of the amended statute, the Legislature provided that aggravating and mitigating factors must be found by a jury beyond a reasonable doubt to justify exceeding the statutory maximum sentence. 13 V.S.A. § 2303(b), (c) (Cum. Supp. 2006); 2005, No. 119 (Adj. Sess.), § 2.

¶ 8. Defendants contend that their sentences are illegal under the *Provost* holding because they exceed the maximums allowed under 13 V.S.A. § 2303 based upon aggravating factors found by a judge only by a preponderance of the evidence. As a result, they argue that they should be resentenced in accordance with the new law. In *State v. Shattuck*, we adopted the common-law rule that changes in constitutional law must be applied to all defendants whose cases are still pending on direct appeal at the time of the change, although we recognized that some "extraordinary cases" might require retroactivity even on collateral review. 141 Vt. 523, 529-30, 450 A.2d 1122, 1125 (1982). While there is no

doubt that post-*Provost*, defendants' sentences would not stand, at the time of their convictions and subsequent appeals, the constitutionality of the homicide-sentencing statute remained unchallenged. Thus, our task today is to determine whether *Provost* is an extraordinary case justifying full retroactivity under our law.

¶ 9. The threshold inquiry in determining the retroactivity of a judicial decision is " 'whether a new rule of law has been announced.' " *State v. Brown*, 165 Vt. 79, 83, 676 A.2d 350, 352-53 (1996) (quoting *Shattuck*, 141 Vt. at 528, 450 A.2d at 1124). For purposes of the retroactivity test, a new rule is one that overrules or significantly alters a prior decision. *Brown*, 165 Vt. at 83, 676 A.2d at 353; see also *Teague v. Lane*, 489 U.S. 288, 301 (1989) (a new rule "breaks new ground or imposes a new obligation on the States"). In contrast, when a decision interprets a statute for the first time, it does not establish a new rule but merely clarifies and enforces prior law. See *Brown*, 165 Vt. at 83, 676 A.2d at 353. Because it "represents the first authoritative construction of the enactment" at issue, full retroactive application is required to put into effect the meaning and policy of the enactment that was intended by the Legislature from its inception.[1] *People v. Garcia*, 684 P.2d 826, 831 (Cal. 1984), *overruled on other grounds by People v. Lee*, 738 P.2d 752 (Cal. 1987). Decisions which alter constitutional rules that our citizens and courts have justifiably relied on for some significant period of our history, however, have different implications for the retroactivity analysis. To ensure some finality in criminal cases, we typically apply such new rules retroactively only to cases on direct review, rather than allow endless collateral attacks on convictions or sentences as new rules emerge, despite courts' compliance with the constitutional standards of the day.

¶ 10. Notwithstanding any contention by defendants to the contrary, *Provost* announced a new rule in the sense that it overruled our prior decisions regarding the constitutionality of the homicide-sentencing scheme and thereby significantly altered our understanding of the protections required by the Sixth Amendment in the sentencing process. Cf. *Shattuck*, 141 Vt. at

---

[1] While the *Provost* decision did not represent the first interpretation of a statute, we distinguish such decisions from those announcing new rules in response to defendants' argument that *Provost* was a case of "first impression" and therefore did not establish a new rule.

528-30, 450 A.2d at 1124-25 (stating that *State v. Gardner*, 139 Vt. 456, 433 A.2d 249 (1981), announced a new rule under the retroactivity test insofar as it decided that trial court must exercise discretion in admitting prior convictions of defendants for impeachment purposes to comply with Sixth and Fourteenth Amendment rights). Thus, it applies retrospectively only to cases pending on direct appeal, unless it qualifies as an "extraordinary case" rendering its application to defendants' cases necessary. *Brown*, 165 Vt. at 84, 676 A.2d at 353.

■ ■ ¶ 11. Our rule on retroactivity does not differ in any significant respect from the federal rule articulated in *Teague*, 489 U.S. 288. In *Teague*, the United States Supreme Court first held that a new constitutional rule not yet established at the time a defendant's conviction becomes final cannot be applied on collateral review unless it falls within one of two narrowly defined exceptions. 489 U.S. at 306-08. Under the federal test, these extraordinary cases requiring full retroactive application are: (1) those establishing new substantive rules, and (2) those announcing watershed procedural rules.[2] *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004) (rearticulating *Teague* exceptions to the common-law

---

[2] Defendants misconstrue our holding in *Brown* as establishing a distinct retroactivity analysis from the federal one for those "extraordinary cases" articulating new constitutional rules of criminal procedure that require retrospective application on collateral review. In *Brown*, we determined that *State v. DeRosa*, 161 Vt. 78, 633 A.2d 277 (1993), did not announce a new rule but merely provided the first interpretation of the Public Defender Act, and therefore it was given retroactive effect on collateral review. 165 Vt. at 83, 676 A.2d at 353. Thus, our discussion of the circumstances under which *new rules* would be applied retroactively to cases on collateral review was merely dicta. Even so, we recognized that when a new constitutional rule implicates "a fundamental element of due process," and its main purpose is "to overcome an aspect of the criminal trial that . . . raises serious questions about the accuracy of guilty verdicts," justice requires full retroactive application of the rule. *Id.* at 84, 676 A.2d at 353 (citations omitted). This language is strikingly similar to that in *Teague* articulating the exception to the common-law retroactivity rule for cases establishing watershed rules of criminal procedure. Although we did not specifically cite *Teague*, we had earlier adopted Justice Harlan's approach in *Mackey v. United States*, 401 U.S. 667, 675-702 (1971), in our decision to apply new rules retroactively only to cases on direct review except in those "extraordinary cases" that dictate a need for full retroactive application. *Shattuck*, 141 Vt. at 529-30, 450 A.2d at 1125. This is the same approach cited as the basis of the federal retroactivity test announced by the high court in *Teague*. Thus, we conclude that our precedent on retroactive application of constitutional rules is in harmony with the federal test and does not dictate a different result in these cases.

retroactivity rule). New substantive rules include those that "narrow the scope of a criminal statute by interpreting its terms," as well as "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id.* at 351-52. These substantive rules are applied retroactively, even on collateral attack, because of the risk that the defendant was convicted of conduct that the law does not criminalize, or was sentenced to punishment that the law cannot impose. *Id.* at 352.

■ ■ ¶ 12. *Provost* is not such a case. On the contrary, the rule established in *Provost* concerns only procedural questions: who determines sentence-enhancing factors and under what standard of proof. See *Coleman v. United States*, 329 F.3d 77, 84 (2d Cir. 2003) (explaining why the rule announced in *Apprendi* is procedural rather than substantive). Generally, new rules of criminal procedure are not applied retroactively on collateral review because unlike new substantive rules, they do not produce a class of wrongly convicted individuals. Full retroactivity is provided only to those watershed procedural rules that implicate " 'the fundamental fairness and accuracy of the criminal proceeding.' " *Schriro*, 542 U.S. at 352 (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)). The United States Supreme Court has emphasized that this class of watershed rules is "extremely narrow," and encompasses only those rules "without which the likelihood of an accurate conviction is *seriously* diminished." *Schriro*, 542 U.S. at 352 (quotation omitted). *Provost* established a new rule of procedure for criminal sentencing, as it affected only the manner in which a defendant's sentence is determined and in no way affected the range of conduct that the State may criminalize. See *id.* It can therefore be applied retroactively to defendants only if we determine that the rule it established, requiring aggravating factors to be found by a jury beyond a reasonable doubt, is a watershed rule and thereby falls within the exception to the common-law retroactivity rule.

■ ■ ¶ 13. Neither the accuracy nor the fundamental fairness of defendants' convictions was brought into question by the constitutional concerns raised in the *Provost* decision. Therefore, we cannot agree with defendants that *Provost* must be applied retroactively to their cases despite their finality. *Provost* concerned only the trial judge's discretion to impose a sentence beyond the presumptive one provided in the statute when that discretion was

exercised upon facts not found by a jury under the reasonable-doubt standard. Numerous federal circuit court cases are in accord that requiring a jury to find sentence-enhancing factors beyond a reasonable doubt does not greatly affect the accuracy of criminal convictions. See, e.g., *Coleman*, 329 F.3d at 90 (holding that *Apprendi* rule is not a watershed rule and declining to apply it retroactively on habeas review); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 669 (9th Cir. 2002) (same); *United States v. Moss*, 252 F.3d 993, 998-99 (8th Cir. 2001) (same). Here, there is no dispute that defendants' guilt was established beyond a reasonable doubt to the satisfaction of their respective juries. The *Provost* error affected only the enhancement of defendants' sentences, and thus the accuracy of their underlying convictions was not put in question by the new constitutional rule. As such, defendants cannot meet the first prong of the watershed-rule exception that the accuracy of a conviction must be "seriously diminished" for it to warrant retroactive application on collateral review.

¶ 14. Similarly, the sentencing procedure established by *Provost* is not a fundamental component of a fair trial. Allowing aggravating factors found by a judge by a preponderance of the evidence to enhance a sentence after a constitutionally sound conviction can hardly be said to create a fundamentally unfair criminal trial. Unlike *Gideon v. Wainwright*, 372 U.S. 335 (1963), which established the quintessential watershed rule that indigent defendants must have access to court-appointed counsel in all criminal prosecutions, the *Provost* rule simply extended the reach of two already well-established principles of criminal procedure: "the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." *Coleman*, 329 F.3d at 89. Furthermore, the *Provost* rule does not affect those defendants convicted of murder who were sentenced to the presumptive incarceration period or whose sentences were shortened based on mitigating factors. Such a rule affecting only a limited number of cases does not have the widespread implications for the fairness of criminal proceedings necessary to place it within the exception to the general rule that new constitutional determinations are applied only to cases pending on direct appeal.

■■ ■■ ¶ 15. Most convincing, however, is the State's argument that a rule that "floats and flows with the tide of legislative pronouncements" cannot possibly be so fundamental as to be a

watershed rule of criminal procedure. *Moss*, 252 F.3d at 1000. After our decision in *Provost*, the Legislature amended 13 V.S.A. § 2303 to allow judges, in their complete discretion and without specific factual findings, to sentence defendants convicted of first or second-degree murder up to life in prison without parole. 2005, No. 119 (Adj. Sess.), § 2. As the United States Supreme Court noted in *Blakely*, such an indeterminate sentencing scheme that leaves sentencing entirely in the judge's discretion in no way offends the Constitution. 542 U.S. at 309. The homicide-sentencing scheme that was invalidated by *Provost*, however, arguably provided greater protection for defendants, as it required judges to make factual findings on the record to justify any deviation from the presumptive sentence. The practical effect of declaring the *Provost* rule a watershed rule of criminal procedure, then, would be to allow a defendant sentenced under the former, and arguably more protective, § 2303 to challenge his sentence collaterally, while a defendant sentenced under the current § 2303 with an identical conviction and sentence would have no constitutional basis to attack his sentence. This is not the hallmark of a "bedrock procedural element[] essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242 (1990) (quotation and emphasis omitted). Thus, we hold that the rule announced in *Provost* is not a watershed rule of criminal procedure, and as such, fails to meet the standard for an exception to the common-law rule that new constitutional rules of criminal procedure apply retroactively only to cases on direct review.[3]

*Affirmed.*

---

[3] As a final matter, we decline to consider defendant White's claim that the trial court erred in finding a waiver of the *Provost* claim, as he could not prevail on his *Provost* claim in any event.