2007 VT 113



State v. White (2006-285, 2006-435 &
2006-436)

 

2007 VT 113

 

[Filed 09-Nov-2007]

 

NOTICE:  This opinion is subject to
motions for reargument under V.R.A.P. 40 as well as
formal revision before publication in the Vermont Reports.  Readers are
requested to notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street,
 Montpelier, Vermont05609-0801 of any
errors in order that corrections may be made before this opinion goes to press.

 

 

                                                                   
2007 VT 113

 

                                               
Nos. 2006-285, 2006-435 & 2006-436

 

 

State
of Vermont                                                                            
Supreme Court

 

On Appeal from

    
v.                                                                                                
District Court of Vermont,

Unit No. 2, Rutland Circuit

 

Robert
L.
White                                                                              
June Term, 2007

 

State
of Vermont

On Appeal from

   
v.                                                                                                 
District Court of Vermont,

Unit No. 1, Windsor Circuit

James
J. Kelley

 

State
of Vermont

On Appeal from

   
v.                                                                                                 
District Court of Vermont,

Unit No. 1, Windsor Circuit

Adam
Corliss                                                       


 

 

M.
Patricia Zimmerman, J.
(06-285)                    


Theresa
S. DiMauro, J. (06-435 & 06-436)

 

William
H. Sorrell, Attorney General, and David Tartter,
Assistant Attorney General,

 
Montpelier, for Plaintiff-Appellee. 

 

Matthew
F. Valerio, Defender General, Anna Saxman, Deputy Defender General, Henry Hinton,

 
Appellate Defender, and Kelly Green, Appellate Defender (On the Brief), Montpelier, for 

 
Defendant-Appellant.  (06-285)

 

Matthew
F. Valerio, Defender General, and Anna Saxman, Deputy Defender General,

 
Montpelier, for Defendants-Appellants.  (06-435) & (06-436)

 

 

PRESENT: 
Reiber, C.J., Dooley, Johnson, Skoglund
and Burgess, JJ.

 

 

¶  1.          
JOHNSON, J.  In these consolidated cases, we are asked
to determine whether our decision in State v. Provost, 2005 VT 134, 179 Vt. 337, 896 A.2d 55,
should be given full retroactive effect.  Each defendant exhausted his
direct appeal prior to our decision in Provost.  Defendants now ask
this Court to reverse their sentences and remand for resentencing
in accordance with the holding in Provost, which invalidated 13 V.S.A. §
2303 (amended by 2005, No. 119 (Adj. Sess.), § 2,
effective May 1, 2006) as unconstitutional.  We affirm the trial court
decisions rejecting full retroactivity of the Provost decision and
upholding defendants’ sentences. 

¶  2.          
           
A brief recitation of the facts is sufficient for our analysis.  Defendant
White was convicted of second-degree murder and sentenced to life in prison
without parole.  At the time, sentencing for second-degree murder was
governed by pre-amendment 13 V.S.A. § 2303(b), which limited the court to
imposing a sentence of twenty-years-to-life imprisonment unless it found
aggravating or mitigating factors justifying a different minimum term.  In
White’s case, the court  heightened the minimum sentence to life in prison
without parole after considering eight aggravating factors and seven mitigating
factors pursuant to pre-amendment 13 V.S.A. § 2303(d)-(e).  The conviction
and sentence were upheld on appeal.  State v. White,
172 Vt. 493,
496, 782 A.2d 1187, 1189 (2001).  After White’s sentencing, this
Court held that § 2303 violated the Sixth Amendment to the United States
Constitution because “any fact that increases the penalty for a crime beyond
the prescribed statutory maximum must be submitted to a jury, and proved beyond
a reasonable doubt.”  Provost, 2005 VT 134, ¶ 15, 179 Vt. 337, 896 A.2d 55
(quotation omitted).  White moved the trial court for resentencing
pursuant to Vermont Rule of Criminal Procedure 35, claiming that his sentence
was illegal in light of the Provost decision.  The court denied the
motion, ruling that White had waived his claim under Provost because he
had not raised it on direct appeal.

 

¶  3.          
Defendants Kelley and Corliss
were both convicted of first-degree murder.  At the time of their
sentencing, pre-amendment 13 V.S.A. § 2303(a) prescribed a sentence of
thirty-five-years-to-life imprisonment for first-degree murder, unless the
court found that aggravating or mitigating factors justified some other minimum
term.  Kelley was sentenced to life in prison without parole based upon
the court’s finding of an aggravating factor, which he contested as unsupported
by the evidence on appeal.  We upheld the sentence in State v. Kelley,
163 Vt. 325,
326, 664 A.2d 708, 709 (1995).  Corliss was sentenced to
fifty-years-to-life imprisonment based on the court’s finding of an aggravating
factor.  He likewise appealed, and we upheld the court’s decision.  State v. Corliss, 168 Vt.
333, 334, 721 A.2d 438, 439 (1998).  After the Provost
decision, defendants Kelley and Corliss filed a motion for correction of their
sentences pursuant to Rule 35, arguing that their sentences were illegal under
the Provost holding.  The trial court denied the motion, finding
that Provost does not apply retroactively on collateral review.

¶  4.          
On appeal, White challenges
the court’s denial of his motion for correction of sentence, arguing both that
the trial court erred in finding waiver of any Provost claim and that Provost
should be applied retroactively to his case.  Kelley and Corliss appeal
denial of their motion for correction of sentence, claiming only that Provost
should receive full retroactivity.

¶  5.          
We limit our analysis today
to defendants’ main issue on appeal—whether our decision in Provost
should be applied retroactively despite defendants’ exhaustion of the direct
appeals process.  The question of a decision’s retroactivity is a legal
one, and therefore our review is nondeferential and
plenary.  Vt. Alliance
of Nonprofit Orgs. v. City of Burlington, 2004 VT 57, ¶ 5, 177 Vt. 47, 857 A.2d 305.

 

¶  6.          
In Provost, the
defendant was convicted of four counts of first-degree murder and challenged
his sentence of four consecutive terms of life in prison without parole as violative of the Sixth Amendment to the United States
Constitution.  Under Vermont’s then-existing-homicide-sentencing scheme,
13 V.S.A. § 2303, the court lengthened the defendant’s minimum sentence from
the presumptive thirty-five-years imprisonment to life without parole based on
its finding of five statutory aggravating factors and no mitigating
factors.  Provost, 2005 VT 134, ¶ 14. 
We based our analysis of the sentencing scheme’s constitutionality on the
United States Supreme Court decisions in Apprendi
v. New Jersey, 530 U.S. 466
(2000), and Blakely v. Washington, 542 U.S. 296 (2004).  See Provost,
2005 VT 134, ¶ 15.  In Apprendi, the
Court held that excepting prior convictions, any fact that increases the
penalty for an offense beyond the prescribed statutory maximum must be proven
to a jury beyond a reasonable doubt; otherwise, the penalty is unconstitutional
under the Sixth Amendment.  530 U.S. at 490. 
Later, in Blakely, the Court clarified that the statutory maximum it
referred to in Apprendi was “the maximum
sentence a judge may impose solely on the basis of the facts reflected in the
jury verdict or admitted by the defendant.”  Blakely,
542 U.S.
at 303 (emphasis omitted).  Thus, we determined in Provost
that the homicide-sentencing scheme was unconstitutional because it allowed the
court to increase the maximum sentence allowed under § 2303(a),
thirty-five-years-to-life imprisonment, to life in prison without parole on the
basis of facts not found beyond a reasonable doubt by a jury.  2005 VT 134, ¶ 15.  

 

¶  7.          
Subsequently, the
Legislature amended the homicide-sentencing statute to comply with Sixth
Amendment protections by allowing courts, within their discretion, to sentence
defendants convicted of first-degree murder to a minimum term of no less than
thirty-five-years imprisonment and a maximum term of life, or life
without the possibility of parole; and defendants convicted of second-degree
murder to a minimum term of no less than twenty-years imprisonment and a
maximum term of life, or life without the possibility of parole, if the
murder was committed on or after the effective date of the new statute.  13 V.S.A. § 2303(a) (cum. supp. 2006); 2005, No. 119 (Adj. Sess.), § 2.  For defendants convicted of a
murder committed prior to the effective date of the amended statute, the
Legislature provided that aggravating and mitigating factors must be found by a
jury beyond a reasonable doubt to justify exceeding the statutory maximum
sentence.  13 V.S.A. § 2303(b), (c) (cum. supp.
2006); 2005, No. 119 (Adj. Sess.), § 2.  

¶  8.          
Defendants contend that
their sentences are illegal under the Provost holding because they
exceed the maximums allowed under 13 V.S.A. § 2303 based upon aggravating
factors found by a judge only by a preponderance of the evidence.  As a
result, they argue that they should be resentenced in
accordance with the new law.   In State v. Shattuck, we
adopted the common-law rule that changes in constitutional law must be applied
to all defendants whose cases are still pending on direct appeal at the time of
the change, although we recognized that some “extraordinary cases” might
require retroactivity even on collateral review.  141 Vt. 523, 529-30, 450
A.2d 1122, 1125 (1982).  While there is no doubt that post-Provost,
defendants’ sentences would not stand, at the time of their convictions and
subsequent appeals, the constitutionality of the homicide-sentencing statute
remained unchallenged.  Thus, our task today is to determine whether Provost
is an extraordinary case justifying full retroactivity under our law.

 

¶  9.          
  The threshold
inquiry in determining the retroactivity of a judicial decision is “ ’whether a new rule of law has been announced.’ “  State v. Brown, 165 Vt.
79, 83, 676 A.2d 350, 352-53 (1996) (quoting Shattuck, 141 Vt. at 528, 450 A.2d at
1124).  For purposes of the retroactivity test, a new rule is one that
overrules or significantly alters a prior decision.  Brown, 165 Vt. at 83, 676 A.2d at 353; see also Teague v. Lane,
489 U.S.
288, 301 (1989) (a new rule “breaks new ground or imposes a new obligation on
the States “).  In contrast, when a decision interprets a statute for the
first time, it does not establish a new rule but merely clarifies and enforces
prior law.  See Brown, 165 Vt. at 83, 676 A.2d at 353. 
Because it “represents the first authoritative construction of the enactment”
at issue, full retroactive application is required to put into effect the
meaning and policy of the enactment that was intended by the Legislature from
its inception.[1] 
People v. Garcia, 684 P.2d 826, 831 (Cal.
1984), overruled on other grounds by People v. Lee, 738 P.2d 752 (Cal. 1987). 
Decisions which alter constitutional rules that our citizens and courts have
justifiably relied on for some significant period of our history, however, have
different implications for the retroactivity analysis.  To ensure some
finality in criminal cases, we typically apply such new rules retroactively
only to cases on direct review, rather than allow endless collateral attacks on
convictions or sentences as new rules emerge, despite courts’ compliance with
the constitutional standards of the day. 

¶  10.      
Notwithstanding any
contention by defendants to the contrary, Provost announced a new rule
in the sense that it overruled our prior decisions regarding the
constitutionality of the homicide-sentencing scheme and thereby significantly
altered our understanding of the protections required by the Sixth Amendment in
the sentencing process.  Cf. Shattuck, 141 Vt. at 528-30, 450 A.2d
at 1124-25 (stating that State v. Gardner, 139 Vt. 456, 433 A.2d 249
(1981), announced a new rule under the retroactivity test insofar as it decided
that trial court must exercise discretion in admitting prior convictions of
defendants for impeachment purposes to comply with Sixth and Fourteenth
Amendment rights).  Thus, it applies retrospectively only to cases pending
on direct appeal, unless it qualifies as an “extraordinary case” rendering its
application to defendants’ cases necessary.  Brown, 165 Vt. at 84, 676 A.2d at 353. 

 

¶  11.      
Our rule on retroactivity
does not differ in any significant respect from the federal rule articulated in
Teague, 489 U.S.
288.  In Teague, the United States Supreme Court first held that a
new constitutional rule not yet established at the time a defendant’s
conviction becomes final cannot be applied on collateral review unless it falls
within one of two narrowly defined exceptions.  489 U.S. at 306-08. 
Under the federal test, these extraordinary cases requiring full retroactive
application are: (1) those establishing new substantive rules, and (2) those
announcing watershed procedural rules.[2]  Schriro v. Summerlin,
542 U.S.
348, 351-52 (2004) (rearticulating Teague exceptions to the common-law
retroactivity rule).  New substantive rules include those that “narrow the
scope of a criminal statute by interpreting its terms,” as well as
“constitutional determinations that place particular 
conduct or persons covered by the statute beyond the State’s power to
punish.” Id. at 351-52.  These substantive rules are applied
retroactively, even on collateral attack, because of the risk that the
defendant was convicted of conduct that the law does not criminalize, or was
sentenced to punishment that the law cannot impose.  Id. at 352.  

 

¶  12.      
Provost is not such a case. On the contrary, the
rule established in Provost concerns only
procedural questions: who determines sentence-enhancing factors and under what
standard of proof.  See  Coleman
v. United States, 329 F.3d 77, 84 (2d Cir. 2003) (explaining why the rule
announced in Apprendi is procedural rather
than substantive).  Generally, new rules of criminal procedure are not
applied retroactively on collateral review because unlike new substantive
rules, they do not produce a class of wrongly convicted individuals.  Full
retroactivity is provided only to those watershed procedural rules that
implicate “the fundamental fairness and accuracy of the criminal
proceeding.”  Schriro, 542 U.S. at 352 (quoting Saffle
v. Parks, 494 U.S.
484, 495 (1990)).  The United State Supreme Court has emphasized that this
class of watershed rules is “extremely narrow,” and 
encompasses only those rules “without which the likelihood of an
accurate conviction is seriously diminished.”  Schriro, 542 U.S. at 353
(quotation omitted).  Provost established a new rule of
procedure for criminal sentencing, as it affected only the manner in which a
defendant’s sentence is determined and in no way affected the range of conduct
that the State may criminalize.  See id.  It can therefore be
applied retroactively to defendants only if we determine that the rule it established,
requiring aggravating factors to be found by a jury beyond a reasonable doubt,
is a watershed rule and thereby falls within the exception to the common-law
retroactivity rule.

 

¶  13.      
Neither the accuracy nor the
fundamental fairness of defendants’ convictions was brought into question by
the constitutional concerns raised in the Provost decision. 
Therefore, we cannot agree with defendants that Provost must be applied
retroactively to their cases despite their finality.  Provost
concerned only the trial judge’s discretion to impose a sentence beyond the
presumptive one provided in the statute when that discretion was exercised upon
facts not found by a jury under the reasonable-doubt standard.  Numerous
federal circuit court cases are in accord that requiring a jury to find
sentence-enhancing factors beyond a reasonable doubt does not greatly affect
the accuracy of criminal convictions.  See e.g., Coleman, 329 F.3d
at 90 (holding that Apprendi rule is not a
watershed rule and declining to apply it retroactively on habeas review); United
States v. Sanchez-Cervantes, 282 F.3d 664, 669 (9th Cir. 2002) (same); Moss,
252 F.3d at 998-99 (same).  Here, there is no dispute that defendants’
guilt was established beyond a reasonable doubt to the satisfaction of their
respective juries.  The Provost error affected only the enhancement
of defendants’ sentences, and thus the accuracy of their underlying convictions
was not put in question by the new constitutional rule.  As such,
defendants cannot meet the first prong of the watershed-rule exception that the
accuracy of a conviction must be “seriously diminished” for it to warrant
retroactive application on collateral review.   

¶  14.      
Similarly, the sentencing
procedure established by Provost is not a fundamental component of a
fair trial.  Allowing aggravating factors found by a judge by a
preponderance of the evidence to enhance a sentence after a constitutionally
sound conviction can hardly be said to create a fundamentally unfair criminal trial. 
Unlike Gideon v. Wainwright, 372 U.S. 335 (1963), which established the
quintessential watershed rule that indigent defendants must have access to
court-appointed counsel in all criminal prosecutions, the Provost rule
simply extended the reach of two already well-established principles of
criminal procedure: “the defendant’s right to a jury trial and the government’s
burden of proof beyond a reasonable doubt.”  Coleman, 329 F.3d at 89.  Furthermore, the Provost rule
does not affect those defendants convicted of murder who were sentenced to the
presumptive incarceration period or whose sentences were shortened based on
mitigating factors.  Such a rule affecting only a limited number of cases
does not have the widespread implications for the fairness of criminal
proceedings necessary to place it within the exception to the general rule that
new constitutional determinations are applied only to cases pending on direct
appeal.

 

¶  15.      
Most convincing, however, is
the State’s argument that a rule that “floats and flows with the tide of
legislative pronouncements” cannot possibly be so
fundamental as to be a watershed rule of criminal procedure.  Moss,
252 F.3d at 1000.  After our decision in Provost,
the Legislature amended 13 V.S.A. § 2303 to allow judges, in their complete
discretion and without specific factual findings, to sentence defendants
convicted of first or second-degree murder up to life in prison without
parole.  2005, No. 119 (Adj. Sess.),
§ 2.  As the United States Supreme Court noted in Blakely,
such an indeterminate sentencing scheme that leaves sentencing entirely in the
judge’s discretion in no way offends the Constitution.  542
U.S.
at 309.   The homicide-sentencing scheme that was invalidated
by Provost, however, arguably provided greater protection for
defendants, as it required judges to make factual findings on the record to
justify any deviation from the presumptive sentence.  The practical effect
of declaring the Provost rule a watershed rule of criminal procedure,
then, would be to allow a defendant sentenced under the former, and arguably
more protective, § 2303 to challenge his sentence collaterally, while a
defendant sentenced under the current § 2303 with an identical conviction and
sentence would have no constitutional basis to attack his sentence.  This
is not the hallmark of “a bedrock procedural element[]
essential to the fairness of a proceeding. ”  Sawyer
v. Smith, 497 U.S.
227, 242 (1990) (quotation and emphasis omitted).  Thus, we hold
that the rule announced in Provost is not a watershed rule of criminal
procedure, and as such, fails to meet the standard for an exception to the
common-law rule that new constitutional rules of criminal procedure apply
retroactively only to cases on direct review.[3]

Affirmed.

 

FOR THE COURT:

 

 

 

_______________________________________

Associate Justice











[1] 
While the Provost decision did not represent the first interpretation of
a statute, we distinguish such decisions from those announcing new rules in
response to defendants’ argument that Provost was a case of “first
impression” and therefore did not establish a new rule. 





[2]  Defendants
misconstrue our holding in Brown as establishing a distinct
retroactivity  analysis from the federal one for
those “extraordinary cases” articulating new constitutional rules of criminal
procedure that require retrospective application on collateral review.  In
Brown, we determined that State v. Derosa,161 Vt. 78, 633 A.2d
277 (1993), did not announce a new rule but merely provided the first
interpretation of the Public Defender Act, and therefore it was given
retroactive effect on collateral review.  165 Vt. at 83, 676 A.2d at 353. 
Thus, our discussion of the circumstances under which new rules would be
applied retroactively to cases on collateral review was merely dicta. 
Even so, we recognized that when a new constitutional rule implicates “a fundamental
element of due process,” and its main purpose is “to overcome an aspect of the
criminal trial that . . . raises
serious questions about the accuracy of guilty verdicts,” justice requires full
retroactive application of the rule.  Id. at 84, 676 A.2d at 353 (citations omitted).  This
language is strikingly similar to that in Teague articulating the
exception to the common-law retroactivity rule for cases establishing watershed
rules of criminal procedure.  Although we did not specifically cite Teague,
we had earlier adopted Justice Harlan’s approach in Mackey v. United States,
401 U.S. 667, 675-702 (1971), in our decision to apply new rules retroactively
only to cases on direct review except in those “extraordinary cases” that
dictate a need for full retroactive application.  Shattuck, 141 Vt. at 529-30, 450 A.2d at 1125.  This is the same approach cited as
the basis of the federal retroactivity test announced by the high court in Teague. 
Thus, we conclude that our precedent on retroactive application of
constitutional rules is in harmony with the federal test and does not dictate a
different result in these cases.





[3] 
As a final matter, we decline to consider defendant White’s claim that the
trial court erred in finding a waiver of the Provost claim, as he could
not prevail on his Provost claim in any event.